# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MARLEEN M. LAPLANT, on her own behalf
and on behalf of a class similarly situated,

        Plaintiffs,

    v.                            Case No. 2:11-CV-00910

THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY, a
Wisconsin mutual insurance corporation,

        Defendant.

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION FOR REMAND

**Plaintiffs' Counsel:**

David Boies III
Timothy D. Battin
Ian Otto
Mark J. Schirmer
Christopher Le
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor
Fairfax, VA  22030
Tele: (703) 764-8700
Fax: (703) 764-8704

George P. Kersten (1008099)
E. Campion Kersten (1007641)
Kenan J. Kersten (1008505)
KERSTEN & MCKINNON, S.C.
11518 N. Port Washington Rd.
Suite 104
Mequon, WI  53092
Tele:(262) 241-0054
Fax:  (262) 241-5935

Jeffrey A. Bartos
GUERRIERI, CLAYMAN, BARTOS &
   PARCELLI, PC
1625 Massachusetts Avenue, NW
Washington, DC 20036
Tele: (202) 624-7400

Mark B. Pollack, WI Bar # 1010557
GALANIS, POLLACK, JACOBS &
   JOHNSON, S.C.
839 N. Jefferson Street, Suite 200
Milwaukee, WI  53202
Tele: (414) 271-5400

# TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. NATURE AND HISTORY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. RELATED LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. The Noonan Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B. Other Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. CAFA'S STRUCTURE AND LEGAL STANDARDS . . . . . . . . . . . . . . . . . . 9

IV. THIS CLASS ACTION SOLELY INVOLVES A CLAIM THAT
RELATES TO THE INTERNAL AFFAIRS OF NORTHWESTERN . . . . . . 12

V. THE CLAIM ARISES UNDER OR BY VIRTUE OF WISCONSIN LAW . . 17

    A. The Extensive Record Establishes That The Class' Claim
Arises Both Under and By Virtue of Wisconsin Law . . . . . . . . . . . . . 17

    B. Wisconsin Choice of Law Principles Confirm that
Wisconsin Law Applies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    C. No Choice-of-Law Problems Arise from *Noonan II*. . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Armenian Assembly of America, Inc. v. Cafesjian,*
    772 F. Supp. 2d 129 (D. D.C. 2011) ................................. 12

*Altman v. Central of Georgia Ry. Co.,*
    254 F.Supp. 167 (D. D.C. 1965) ................................... 14

*Associated Fin. Group, LLC v. Qualified Annuity Services, Inc.,*
    Case No. 10-C-419, 2010 U.S. Dist. LEXIS 124384
    (E.D. Wis. November 23, 2010) ................................... 17

*Auto-owners Ins. Co. v. Websolv Computing, Inc.,*
    580 F.3d 543 (7th Cir. 2009) ....................................... 22

*Barnett Bank of South Florida v. FDIC,*
    883 F. Supp. 707 (SD Fla. 2009) .................................. 16

*Becher v. The Northwestern Mut. Life Ins. Co.,*
    Central District California Case No. CV-10-6264, [Granted Remand]
    Sup. Ct. of Los Angeles County Case No. BC-441-982] ........... 8, 11, 28

*Beloit Liquidating Trust v. Grade,*
    270 Wis. 2d 356, 677 N.W.2d 278 (Wis. 2004) .................... 26, 27

*Brill v. Countywide Home Loans, Inc.,*
    427 F.3d 446 (7th Cir. 2005) ...................................... 11

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993) ............................................ 21

*CTS Corp. v. Dynamics Corp. of Am.,*
    481 U.S. 69 (1987) .......................................... 13, 14

*DeCesare v. Lincoln Benefit Life Co.,*
    852 A.2d 483 (R.I. 2004) ...................................... 19, 25

*Drinkwater v. Am. Fam. Mut. Ins.,*
    290 Wis. 2d 642, 714 N.W.2d 568 (Wis. 2006) .................... 22, 27

iii

*Edgar v. MITE Corp.,*
    457 U.S. 624 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 26

*Estate of Pew v. Cardarelli,*
    527 F.3d 25 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Friese v. Superior Court,*
    36 Cal.Rptr.3d 558 (Cal. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Greenwich Fin. Services Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp.,*
    603 F.3d 23 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17, 29

*Grimsdale v. Kash N' Karry Foods,*
    564 F.3d 75 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Handal v. Am. Farmers Mut. Cas. Co.,*
    79 Wis. 2d 67, 255 N.W.2d 903 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hart v. FedEx Ground Package Sys.,*
    457 F.3d 675 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*In re Harnischfeger Industries, Inc.,*
    293 B.R. 650, 662 (Bankr. D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Heath v. Zellmer,*
    35 Wis. 2d 578, 151 N.W. 2d 664 (Wis. 1967) . . . . . . . . . . . . . . . . . . . . . 24, 26

*Himmel v. Bucyrus Int'l., Inc.,*
    Case No. 10-C-1104 (E.D. Wis. August 23, 2011) . . . . . . . . . . . . . . 11, 18, 29

*Hitachi Med. Sys. Am., Inc. v. Branch,*
    Case No. 5:09-cv-01575, 2010 U.S. Dist. LEXIS 19405,
    (N.D. Ohio March 4, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,*
    535 U.S. 826 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Huber v. Martin,*
    127 Wis. 412, 105 N.W. 1031 (Wis. 1906) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

iv

*Hystro Products, Inc. v. MNP Corp.,*
    18 F.3d 1384, 1393 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In Re Sprint-Nextel Corp.,*
    593 F.3d 669 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Jefferson v. United States,*
    546 F.3d 477 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Katz v. Gerardi,*
    552 F.3d 558 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Krueger v. The Northwestern Mut. Life Ins. Co.,*
    Case No. 1:10-CV-00128 (Northern District of Florida 2010) . . . . . . . 7, 8, 11

*Madden v. Cowen & Co.,*
    576 F.3d 957 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*National Assoc. of Home Builders v. Defenders of Wildlife,*
    551 U.S. 644 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Noonan v. The Northwestern Mut. Life Ins. Co.* ("Noonan I")
    276 Wis. 2d 33, 687 N.W.2d 254 (Wis. App. 2004) . . . . . . 7, 18, 21, 25, 27, 29

*Noonan v. The Northwestern Mut. Life Ins. Co.* ("Noonan II"),
    App. No. 2005AP1683, 298 Wis. 2d 247, 726 N.W.2d 356
    (Wis. App. November 16, 2006) (unpublished) . . . . . . . . . . . . . . . . . . . 7, 8, 28

*Nu-Way Systems of Indianapolis, Inc. v. Belmont Marketing, Inc.,*
    635 F.2d 617 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Payne v. Churchich,*
    161 F.3d 1030 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Politt v. Health Care Service Corp.,*
    558 F.3d 615 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 29

*Reichart v. The Northwestern Mut. Life Ins. Co.,*
    Superior Court of Jefferson County, Washington
    Case No. 10-2-00414-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Schlosser v. Allis-Chalmers Corp.* (Schlosser II)
    86 Wis. 2d 226, 271 N.W.2d 879 (1978) . . . . . . . . . . . . . . . . . . . . . . . 22, 24, 27

*Serrano v. 180 Connect, Inc.,*
    478 F.3d 1018 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State Farm Mut. Auto Ins. Co. v. Gillette,*
    251 Wis. 2d 561, 641 N.W.2d 662 (Wis. 2002) . . . . . . . . . . . . . . . . . . . . . 22

*State Farm Mut. Auto. Ins. Co. v. Sup. Ct. of Los Angeles County,*
    114 Cal. App. 4th 434 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Sun Forest Corp. v. Shvili,*
    152 F. Supp. 2d 367, 387 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sybron Transition Corp. v. Security Ins. Co. of Hartford,*
    107 F.3d 1250 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Johnson,*
    152 F.3d 618, 625 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Misc. Firearms, Explosives, Destructive Devices, and Ammunition,*
    376 F.3d 709 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Rosa-Ortiz,*
    348 F.3d 33 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Utica Mut. Ins. Co. v. Klein & Son, Inc.,*
    157 Wis. 2d 552, 460 N.W. 2d 763 (Wis. App. 1990) . . . . . . . . . . . . . . . . . 30

*Zinda v. Krause,*
    191 Wis. 2d 154, 528 N.W. 2d 55 (Wis. App. 1995) . . . . . . . . . . . . . . . . . . 29

*Zinn v. Germantown Farmers' Mut. Ins. Co.,*
    132 Wis. 86, 111 N.W. 1107 (1907) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATUTES**

28 U.S.C. § 1332

28 U.S.C. § 1441

28 U.S.C. § 1446

28 U.S.C. § 1450

28 U.S.C. § 1453

Wis. Stat. § 632.62

**OTHER MATERIALS**

Restatement (Second) Conflicts of Laws §§ 188, 205, 302, 304

Wright & Miller, Federal Practice and Procedure, § 3738

Black's Law Dictionary (6th Ed.)

Couch on Insurance (3rd Ed. 1996), Vol 3

Richards, Insurance § 8

Appleman, Insurance law & Practice (9th Ed 1987), § 10059

# INTRODUCTION[1]

After losing at trial and failing in an attempt to disqualify the state court trial judge who ruled against it, Northwestern has removed this case, claiming the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, gives this Court subject matter jurisdiction and provides a removal right.[2]  But in CAFA, Congress expressly forbade extending federal jurisdiction to cases like this one, which involves a dispute over a corporation's dividend obligations to its owners.

The evidence received in a full two-week trial on the merits, plus the findings, conclusions and declarations of the circuit court thereon, establish that this case falls squarely within the Congressional prohibition that CAFA "shall not" extend jurisdiction to cases solely involving claims relating to a company's internal affairs and arising under or by virtue of the laws of  the state in which the company is organized (§ 1332(d)(9)(B)).  Nor does CAFA permit removal in such cases (§ 1453(d)(2)).   Northwestern is incorporated, domiciled and headquartered in Wisconsin, where all conduct at issue occurred.  The rights Northwestern violated – rights of a Class of Annuitants to a full share of Northwestern's divisible surplus

---

[1] Documents filed with Northwestern's removal notice are cited as "NDoc.___" and the references are to the *computer-imprinted* document and page numbers, rather than the number given in Northwestern's removal notice and declaration, which may not match the computerized numbering.  Citations to Exhibits 42 *et seq* are to additional exhibits filed with this brief.  Where appropriate these citations are to a binder and a tab within the binder (*e.g.*, "Exh. 46-1").

[2] Northwestern concedes this court does not have the historical diversity jurisdiction conferred in § 1332(a), and that traditional removal under 28 U.S.C. §§ 1441 and 1446 does not apply.

(its net profit) – exist because Wisconsin statutory and common law create those rights. Because Northwestern is a Wisconsin mutual insurance company, Wisconsin Statutes § 632.62 governs the relationship between the company and the Annuitants. Section 632.62 also establishes and controls Northwestern's obligation to determine and distribute dividends. And, as Northwestern has repeatedly argued elsewhere, disputes over dividend rights are quintessential internal affairs matters, governed by Wisconsin law for all its policyholders, regardless of where they reside. Thus, this Court does not have subject matter jurisdiction and this case should be remanded to state court.

## I. NATURE AND HISTORY OF THE CASE.

As of March 31, 1985, the plaintiff Marleen LaPlant and all members of the Class owned deferred annuities (the "Annuities" or "Pre-MN Annuities") issued by Northwestern. In the deferral phase, the Annuities "participate" in the net profits of the company through annual dividends. They grow in value through premiums paid and dividends until they mature, typically at retirement age. Premium payments and dividends then stop and, in the distribution phase, Annuitants receive "Monthly Retirement" payments based on the value to which their Annuities have grown.

It is undisputed that, as a mutual insurance company, Northwestern is owned by its participating policyholders[3] and that, being incorporated, domiciled

---

[3] *See*, NDoc. 2-27, p. 87 and *Huber v. Martin*, 127 Wis. 412, 429-39, 105 N.W. 1031 (Wis. 1906) and *Zinn v. Germantown Farmers' Mut. Ins. Co.,* 132 Wis. 86, 89, 111 N.W.

and headquartered in Wisconsin, it is subject to Wis. Stat. § 632.62 and related

Wisconsin law governing its relationship with and duties to its owners.

Wis. Stat. § 632.62 includes the following:

(2) Every participating policy shall by its terms give its holder full right to participate annually in the part of the surplus accumulations from the participating business of the insurer that are to be distributed.

The statute further requires Northwestern to annually determine its "divisible

surplus" (over-all net profits), which "shall be equitably apportioned and returned

[to the participating policyholders] as a dividend". § 632.62(4)(b).

Pursuant to these mandates the Annuities here all provide:

This policy shall share in the divisible surplus, if any, of the Company. This policy's share shall be determined annually and credited as a dividend. (*See, e.g.,* § 4.1 of Annuity attached to Exh. 42.)

The gravamen of this case is that Northwestern, unilaterally and without

notice to or agreement from the Annuitants, in 1985 changed the basis for

determining dividends for the Pre-MN Annuities from their share of Northwestern's

divisible surplus (*i.e.,* over-all net profits) to the interest earned by a separate

short-term bond fund (the "1985 Change"). In so doing, Northwestern violated Wis.

Stat. § 632.62 and the contractual language the statute requires.[4]

---

1107 (Wis. 1907) (nationally-leading cases holding that participating policyholders own the mutual, just as stockholders own a typical stock company). *See also*, COUCH ON INSURANCE (3rd Ed. 1996), Vol. 3, §§ 39:15, 39:37 and 39:40, and Vol. 5, § 80:52, and RICHARDS, INSURANCE § 8; APPLEMAN, INSURANCE LAW & PRACTICE (9TH Ed 1987), § 10059.

[4] As established in the trial evidence and found by the state court, Northwestern determined internally that continuing to provide the existing Annuities the dividends required under § 632.62 would conflict with the marketing of a new Northwestern annuity product ready for sale by 1985. NDoc. 2-27, pp. 73-74, 81, 89-90. Northwestern designated

3

Marleen LaPlant commenced this suit in Milwaukee County Circuit Court in 2008 seeking a declaratory judgment on behalf of Pre-MN Annuitants whose policies were purchased in Wisconsin and were in force as of 1985 (the "Class"). The court denied Northwestern's motion to dismiss and certified the proposed class. NDocs. 2-2, 2-7, and 2-13. After extensive discovery, both sides waived a jury and this case proceeded to a two-week trial to the court. The trial transcript (20 volumes totaling 2131 pages) contains the testimony of 21 witnesses, and over 500 exhibits were received in evidence. NDoc. 2-27, p. 3.

As is apparent from the circuit court's decision, the Class's claim was firmly established and Northwestern's defenses were totally discredited at the trial. N.Doc. 2-27. Its own nationally-recognized consultant had found the 1985 Change would be illegal, impractical and inequitable. Exh. 46-6, pp. 31, 34. Northwestern's officers were repeatedly impeached by their own contemporaneous documents; its bogus "innocent motivation" for making the 1985 Change was contradicted by its own expert witnesses and contemporaneous records; its scheme to disguise the Change confirmed its intentional wrongdoing. *See*, NDoc. 2-28, pp. 8-16, citing trial evidence contained in Exh. 46. Moreover, both sides' exhibits and lay and expert testimony established beyond dispute that all relevant conduct dealt with all Pre-MN Annuitants as a "block." NDoc. 2-33, pp. 18-22, citing trial evidence contained in Exh. 47.

the new Annuity its "MN" series. Accordingly, the Annuities already in force (those owned by the Class) at that point became known within Northwestern as "Pre-MN Annuities."

The trial court decision and order includes findings, conclusions and declarations in favor of the Class on all issues. NDoc. 2-27, pp. 62-95. The court determined, *inter alia*, that in making the 1985 Change, concealing it and crediting Annuity dividends on the altered basis annually thereafter, Northwestern breached contractual and fiduciary duties created by Wis. Stat. § 632.62, resulting in harm to the Annuitants. NDoc. 2-27, pp. 91-95. The court also found that "the '1985 change' and related conduct of NWM were done as to [the entire] block of Pre-MN annuities as a whole. None of the Pre-MN annuitants were treated separately." NDoc. 2-27, p. 90.

Because of the manifestly unitary nature of the issues and evidence on Northwestern's treatment of the "block" of Pre-MN Annuities regardless of the Annuitants' residence, the plaintiffs requested that the court retain jurisdiction, among other reasons, to join all Pre-MN Annuitants affected by the court's findings, conclusions and declarations. NDoc. 2-25, pp. 116-121. The court retained jurisdiction, stating:

> The court exercises discretion to retain jurisdiction in this matter with respect to considering any further or supplemental relief allowed as necessary and proper under law in this matter. This dispute is complicated and contains many issues. Intentional and repeated concealment of wrongdoing over a period of a quarter century took place. It will be a more efficient use of limited resources in this complicated matter to have the court that heard the trial also deal with supplemental relief issues, if any occur. NDoc. 2-27, p. 95.

The case was then interrupted by Northwestern's motion that the judge recuse himself, based on information it had in its files since the inception of the

case.  *See* NDocs. 2-28 and 2-29, p. 57-58.  The motion was denied and the Court of Appeals denied Northwestern's petition for interlocutory appeal.  NDocs. 2-29 and 2-30.

Plaintiffs then moved to redefine the Class so that the declaratory findings would be available to all affected Annuitants (the entire Pre-MN block).  After obtaining agreement for an extended filing date for its responsive brief (October 7, 2011) and stipulating to an October 31, 2011 hearing date for the motion to join all Pre-MN Annuitants (Exh. 45), Northwestern instead removed the case to this Court on September 28, 2011.

## II.    RELATED LITIGATION.

### A.    The Noonan Litigation.

This case was preceded by a state court action commenced by Catherine and Daniel Noonan, who also own Pre-MN Annuities.  In the year 2000, Daniel Noonan, a sitting circuit judge in Milwaukee County, sensed the dividends credited to the Annuities were insufficient.  After several inquiries to Northwestern and follow-up investigation revealed the 1985 Change, the Noonans sued Northwestern, charging breach of contract and breach of fiduciary duty.  Northwestern  improvidently removed the case to this court, which remanded.[5]  The trial court then granted Northwestern's motion to dismiss but the Court of Appeals reversed.  Its decision

---

[5] In *Noonan v. The Northwestern Mut. Life Ins. Co.,* Case No. 02-C-0128*,* (E.D. Wis. September 30, 2002) (unpublished) Chief Judge Clevert rejected Northwestern's theory that the case should be governed by ERISA.

construed and applied Wis. Stat. § 632.62, and upheld the legal sufficiency of the Noonans' claim for breach of contract and breach of fiduciary duty under that statute. *Noonan v. Northwestern Mut. Life Ins. Co.,* 276 Wis. 2d 33, 687 N.W.2d 254 (Wis. App. 2004) ("*Noonan I*") (Exh. 43.)

The case was then assigned to Shawano County Reserve Circuit Judge Earl Schmidt, who declined to certify a national class based upon concerns regarding potential manageability problems alleged by Northwestern. In *Noonan v. Northwestern Mut. Life Ins. Co.,* App. No. 2005AP1683, 298 Wis. 2d 247, 726 N.W.2d 356 (Wis. App. November 16, 2006) (unpublished) ("*Noonan II*") (Exh. 44) the Court of Appeals upheld the denial of class certification as being within the trial court's "wide discretion". The *Noonan* case remains pending in Milwaukee County Circuit Court.

**B.  Other Litigation.**

Prior to the trial of this case, class counsel commenced damages actions on behalf of Annuitants in Florida and Washington, and, in California, for a national class, all to provide interim protection for the rights of putative class members. The complaint in each action alleged that the determinations resulting from the anticipated trial of this case would be issue-preclusive. Northwestern's answers in all three cases denied such preclusive effect. Exhibit 47-C.

Northwestern removed the Florida action, *Krueger v. Northwestern,* to federal court. Remand was denied because the court felt it was not clear what law applies.

NDoc. 2-38, p. 5.  A motion to certify a Florida state class was denied and that action remains pending in the Florida district court.

Although Northwestern also removed the California action, *Becher v. Northwestern*, the federal court there remanded.  *See, Becher v. The Northwestern Mutual Life Insurance Company,* 2010 U.S. Dist. LEXIS 135854 (C.D. Cal. 12/9/2010) (Exh. 47-F).  In *Becher* (which Northwestern fails to include or mention in its removal papers). the federal district judge held "The claims in this case are related to the internal affairs of Northwestern" and "arise[] under or by virtue of the laws of Wisconsin" so that "the court must remand the case to state court."  Exh. 47-F, p. 7.[6]  On remand, Northwestern then moved to strike the national class allegations, which the court granted, reasoning in part that, while a California class could be pursued in that action, certification of a national class should be pursued in Wisconsin rather than California.  *See* Exh. 47-G at 3-4, 11-12, 22, 28 and 29. *Becher* has been stayed until January, 2012, pending developments in this action.

In the Washington action, *Reichart v. Northwestern,* there have been no significant developments and the parties have agreed to a stay.

---

[6] In *Becher,* the district judge also specifically rejected the analysis of the *Krueger* court and the defendant's characterization of the holdings of *Noonan II.*  *See Becher,* Exh. 47-F, p. 9, fn 1.

# ARGUMENT

## III.    CAFA'S STRUCTURE AND LEGAL STANDARDS.

CAFA created two relevant statutes: one for jurisdiction, 28 U.S.C. § 1332(d), and one for removal, 28 U.S.C. § 1453.  These statutes expressly exclude federal jurisdiction over and removability of cases such as this.

CAFA adds subsection (d) to the federal diversity jurisdiction statute, 28 U.S.C. § 1332.  Subsection (d)(2) grants district courts subject matter jurisdiction for certain class actions with so-called "minimal diversity":

> (2)   The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> * * * * *

Subsections (d)(5) through (9) further define CAFA jurisdiction.[7]   Subsection (d)(9) identifies specific claims to which the CAFA  jurisdictional grant "shall not apply" and, as shown below, establishes that CAFA jurisdiction does not extend to this case:

> (9)   Paragraph (2) shall not apply to any class action that solely involves a claim–
> * * * * *

---

[7] Subsections (3) and (4) provide for permissive and mandatory abstention.  Once the case is before the district court under CAFA, it may in its discretion "decline to exercise jurisdiction" under (d)(3) in certain circumstances, and must "decline to exercise jurisdiction" under (d)(4) in certain circumstances.

(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

* * * * *

The statute's use of "shall not" makes it mandatory. *National Assoc. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661-62 (2007). CAFA's words must be given their plain meaning unless doing so would lead to absurd results. *Jefferson v. United States*, 546 F.3d 477, 483-484 (7th Cir. 2008). Further, CAFA should not be construed so as to make any provision "meaningless, redundant, or superfluous." *United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004).

Northwestern's removal notice does not explain how CAFA jurisdiction can exist in the face of § 1332(d)(9)(B), or how removal was proper despite a comparable prohibition ("shall not apply") in the CAFA removal statute, § 1453(b)(2). Instead, it appears simply to rely on its view as to the "burden" to prove facts demonstrating CAFA jurisdiction does or does not exist, and vaguely and incorrectly generalizes that "a review of the Complaint confirms that none of the exceptions to CAFA applies here". Removal Notice, ¶21 and n. 2.

Northwestern mistakes the nature of the burden. It also ignores the fully developed evidentiary record and the trial court findings, conclusions and declarations conclusively establishing this is an "internal affairs" case and thus is expressly excluded from the jurisdiction CAFA creates.

10

As with traditional diversity jurisdiction/removal rules, the removing defendant has the burden to show federal jurisdiction under CAFA when remand has been requested. *Brill v. Countywide Home Loans, Inc.,* 427 F.3d 446, 447-9 (7th Cir. 2005); *Hart v. FedEx Ground Package Sys.,* 457 F.3d 675, 679 (7th Cir. 2006).[8] Courts disagree as to which side has the burden to prove the facts determining applicability of CAFA subsections (d)(5) and (9).[9] While we believe the better law is as provided in *Hart, Serrano, Madden* and *Becher* (*see* fn 9), the "burden" issue is immaterial in light of the procedural status of this case.

The Seventh Circuit's *Hart* decision expressly holds that "burden" issues go to which party (typically, at the early stage of litigation) has the burden to develop *proof* of the *facts* which determine jurisdiction does or does not apply. *Hart,* 457 F.3d at 681; *see also, In Re Sprint-Nextel Corp.,* 593 F.3d 669 (7th Cir. 2010)

---

[8] If, however, the court *has* jurisdiction but is asked or required to abstain ("decline to exercise jurisdiction") under subsecs. (d)(3) or (d)(4), the burden shifts to the party seeking abstention to produce evidence satisfying the court that the factual grounds for abstention exist. *See, Hart,* 457 F.3d at 679-681, distinguishing these abstention provisions from subsec. (d)(5), which [like (d)(9)] "contains mandatory language making CAFA inapplicable" – *i.e.,* CAFA jurisdiction "shall not apply."

[9] *Compare, Himmel v. Bucyrus Int'l., Inc.*, Case No. 10-C-1104 (E.D. Wis. August 23, 2011) (burden on plaintiff seeking remand under § 1332(d)(9)(C)), the *Krueger* decision and other cases cited in Northwestern's removal notice, with the Seventh and Ninth Circuits' decisions in *Hart,* 457 F.3d at 679 (burden on the party asserting federal jurisdiction to show inapplicability of (d)(5) [that CAFA jurisdiction "shall not apply" to any class action of less than 100]); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 n3, 1021-22 (9th Cir. 2007) (same, citing *Hart*); *Madden v. Cowen & Co.*, 576 F.3d 957, 974-76 (9th Cir. 2009) (proponent of federal jurisdiction has burden to prove jurisdictional prerequisites), and the Central District of California's decision in the related case of *Becher v. Northwestern Mut. Life Ins. Co.* (Exh. 47-F, pp. 4-5), holding that Northwestern had the burden to show inapplicability of § 1332(d)(9)(B).

(denying remand for insufficiency of proof of "citizenship" to qualify for (d)(4) abstention).

This case comes to this Court with a fully-developed trial record, findings, conclusions and declarations by the state court which *supply* the proof and *establish the relevant facts.*  As held in *Grimsdale v. Kash N' Karry Food Stores, Inc.,* 564 F.3d 75, 78 (1st Cir. 2009), the question of burden thereby becomes  immaterial and the remand motion "turns purely on questions of law" – application of CAFA's provisions to the established facts.

As shown below, the extensive record here establishes that this case comes within the "internal affairs" provisions of § 1332(d)(9)(B) and § 1453(d)(2), so that CAFA jurisdiction and removal "shall not apply" and the case must be remanded.

## IV.  THIS CLASS ACTION SOLELY INVOLVES A CLAIM THAT RELATES TO THE INTERNAL AFFAIRS OF NORTHWESTERN.

The first part of the § 1332(d)(9)(B) exclusion from federal jurisdiction is that the case must solely involve a claim relating to a company's internal affairs.  CAFA makes an explicit policy choice:  federal jurisdiction under the statute "shall not" extend to cases such as this one.

Section 1332(d)(9)(B) reflects a long-standing tradition of preferring state court adjudication of corporate governance matters.  *Armenian Assembly of America, Inc. v. Cafesjian*, 772 F. Supp. 2d 129, 159-61 (D. D.C. 2011) (strong federal tradition of deferring to state courts in corporate governance affairs).  The benefits of allowing the law of the corporation's home state to govern issues between

the owners and managers of a company are beyond dispute.  The "free market system depends at its core upon the fact that a corporation -- except in the rarest situations -- is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation."  *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987).

With these principles in mind, CAFA attempts to strike a "delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state."  *Hart* at 682; *see also In re Sprint-Nextel Corp.*, *supra,* 593 F.3d at 673 (while CAFA may have expanded federal jurisdiction, it provided that specific types of cases must remain in state courts even though the case may have national effects).  This controversy *is* "strongly linked" to Wisconsin.

Congress emphasized the force of its policy choice by specifically excluding internal affairs cases from CAFA's removal provisions and by providing that orders remanding such cases are not subject to appeal.  28 U.S.C. § 1453(d)(2); *Greenwich Fin. Services v. Countrywide Fin. Corp.,* 603 F.3d 23, 27, n. 3 (2nd Cir. 2010).  *Estate of Pew v. Cardarelli,* 527 F.3d 25, 30 (2nd Cir. 2008) pointedly referred to Congress's exclusion of cases such as this:  "Subsection (B) of § 1332(d)(9) carves out class actions that are within the states' purview of corporate law and governance."  Sections 1332(d)(9)(B) and 1453(d)(2) facilitate federalism by allowing states to make their own choices as to the powers, rights and liabilities related to the

"internal affairs" of corporate entities they create. *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. at 89-90.

The Supreme Court defined "internal affairs" in *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982):

> The internal affairs doctrine is a conflict of laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs -- matters peculiar to the relationships among or between the corporation and its current officers, directors and shareholders[.]

Northwestern is indisputably owned by its participating policyholders. *See ante*, at 2. Also, it is well settled that disputes between a corporation and its owners regarding dividends relate to the corporation's "internal affairs." *E.g., State Farm Mut. Auto. Ins. Co. v. Superior Court of Los Angeles County,* 114 Cal. App. 4th 434, 8 Cal. Rptr. 3d, 56 (2003) (as a mutual State Farm is "owned by its policyholders," and its 'internal affairs' include ... *the declaration and payment of dividends*" (emphasis in the original)).[10]

Northwestern cannot in good faith challenge these principles, having relied on them in at least three other cases - most recently *in this court.* In a brief filed

---

[10] *See also, Hitachi Med. Sys. Am., Inc. v. Branch*, Case No. 5:09-cv-01575, 2010 U.S. Dist. LEXIS 19405, *26 (N.D. Ohio March 4, 2010) (listing examples of internal affairs, "which involve primarily a corporation's relationship to its shareholders," that include "the declaration and payment of dividends. . . ." (*citing* Restatement Second of Conflicts of Law § 302, comment (a)). *See In re Harnischfeger Industries, Inc.*, 293 B.R. 650, 662 (Bankr. D. Del., 2003) (internal affairs doctrine "generally appl[ies] to such issues as: . . . the declaration and payment of dividends. . . ."); *Altman v. Central of Georgia Ry. Co.*, 254 F.Supp. 167, 173 (D. D.C. 1965) (action to compel declaration of dividends would require "detailed inquiry into various aspects of internal affairs"); *Friese v. Superior Court*, 36 Cal.Rptr.3d 558, 568 (Cal. App. 2005) (internal affairs include the declaration and payment of dividends).

April 6, 2011 in *Smith v. Northwestern Mutual*, (E.D. Wis. Case No. 11-CV-71) (Exh. 47-I, p. 11), Northwestern argued (in distinguishing Smith's claim which involved policy loan rates but not dividends): claims that "challenge corporate governance decisions, the distribution of divisible surplus [*i.e.,* dividends], or any other obligations owed uniformly and equally to all of the company's policy holders" are internal affairs and that since "it would be 'impractical to have issues such as these governed by the conflicting local rules of two or more states,' the state law of the company's domicile will be applied to such claims," citing the *State Farm* case.

Northwestern argued the same in another case challenging its dividends:

> That is a quintessential internal affairs matter. So it is governed by the law of the domicile [for Northwestern, Wisconsin law].

Exh. 47-H, p. 4 (*Papadakis v. Northwestern Mutual* transcript, again citing *State Farm*). *See also,* Northwestern's argument in *Heretick v. Northwestern Mutual*, Exh. 47–J, pp. 5 and 13.

All of the trial evidence in this case and the circuit court's post-trial decision manifestly relate to what Northwestern admits are its internal affairs – determination and distribution of dividends to the Pre-MN Annuitants. The same is true of the complaint, Northwestern's bald assertion (Removal Notice, ¶ 21) to the contrary notwithstanding. *See,* Exh. 42, ¶¶ 1-6, 15-35, 37, 39-40, which relates entirely to Northwestern's dividend-related conduct.

These allegations are confirmed by the trial record and the court's findings, conclusions and declarations, which now control. All orders and proceedings in the

state court prior to removal remain in full force and effect unless and until there is compelling reason to formally change them. *Payne v. Churchich,* 161 F.3d 1030, 1037-8 (7th Cir. 1998); *Barnett v. Bank of South Florida,* 883 F. Supp. 707, 709 (S.D. Fla. 1995); 28 U.S.C. § 1450; 14C Wright & Miller, *Federal Practice and Procedure,* § 3738, p. 723. The district court takes this case as it existed in the state court when removed and must give effect to all actions of the state court before removal. *Id.; Nu-Way Sys. of Indianapolis, Inc. v. Belmont Marketing, Inc.,* 635 F.2d 617, 621 (7th Cir. 1980) and *Sun Forest Corp. v. Shvili,* 152 F. Supp. 2d 367, 387 (S.D.N.Y. 2001).

The trial evidence established how and why Northwestern made the 1985 Change and has annually determined dividends for Pre-MN Annuities ever since. These are manifestly matters of Northwestern's internal affairs.[11] Likewise, the trial court's findings and conclusions (NDoc. 2-27) all relate entirely to dividend issues between Northwestern and Pre-MN Annuitants – core internal affairs issues. This thorough and consistent record is dispositive: this declaratory judgment action "solely involves a claim . . . that relates to the internal affairs of [Northwestern]." 28 U.S.C. § 1332(d)(9)(B). To borrow Northwestern's phrase, this "is a quintessential internal affairs matter."

---

[11] A summary of the trial evidence is set forth at NDoc. 2-25, pp. 88-92, with citations to the trial record at NDoc. 2-25, pp. 4-78. NDoc. 2-28, pp. 11-19, also summarizes much of that record, citing evidence identified and contained in Exh. 46 filed herewith. NDoc. 2-33, pp. 18-22, summarizes other relevant trial evidence identified and contained in Exh. 47 filed herewith.

## V. THE CLAIM ARISES UNDER OR BY VIRTUE OF WISCONSIN LAW.

The second part of the CAFA (d)(9)(B) exclusion from federal jurisdiction is that the claim arises either "under or by virtue of the laws of the state of incorporation."  The claim here arises *both* under *and* by virtue of the laws of Northwestern's state of incorporation, Wisconsin.

### A. The Extensive Record Establishes That The Class' Claim Arises Both Under and By Virtue of Wisconsin Law.

A "claim" in this context means the substance of the plaintiff's grievance against the defendant.  *Katz v. Gerardi,* 552 F.3d 558, 561 (7th Cir. 2009) (construing §1453(d)).  A claim "arises under" a state's law if evaluating the validity of the claim requires interpreting and applying that law.  *See, Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (a claim "arises under" patent law if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law").  In determining whether a claim "arises under" a body of law, courts look only to the claim itself, not to potential defenses.  *See Politt v. Health Care Service Corp.*, 558 F.3d 615, 616 (7th Cir. 2009); *Associated Fin. Group, LLC v. Qualified Annuity Services, Inc.*, 2010 U.S. Dist. LEXIS 124384 at *3-4 (E.D. Wis. 2010); *Greenwich*, 603 F.3d at 31-32 (interpreting 1332(d)(9)).  Citing *Greenwich*, Chief Judge Clevert, addressing § 1332(d)(9)(C), held in *Himmel v. Bucyrus Int'l. Inc.* that "in determining whether removal is warranted 'the focus[] of the inquiry is on the source of the right that the plaintiff's claim seeks to enforce. . . .'"  NDoc. 2-40 at p. 3.

The claim in this class action "seeks to enforce" rights arising under and by virtue of Wis. Stat. § 632.62, as construed and applied in *Noonan I,* 276 Wis. 2d 33 (Exh. 43). Wis. Stat. § 632.62 requires that an annuity issued by a Wisconsin mutual "by its terms" provide the policyholder with the "full right to participate annually" in the company's divisible surplus through dividends. §§ 632.62(1)(b), (2) and (4)(b); *Noonan I* (Exh. 43), ¶¶ 11-17. The Pre-MN Annuities are such participating policies and Northwestern included the required language in all the Annuity contracts, regardless of the policyowner's state of residence. Further, Wisconsin law defines the relationship between Northwestern and the Annuitants arising under Wis. Stat. §632.62 as fiduciary in nature, as held in *Noonan I* (Exh. 43) at 46, ¶ 23:

> . . . Wis. Stat. § 632.62(4)(b) defines how Northwestern is to determine its annual surplus. The statute then requires that the surplus be "equitably apportioned and returned as a dividend to the participating policy-holders. . ." In other words, Northwestern occupies a position of trust not just to determine the surplus, but to equitably apportion the surplus among all participating policyholders.

Accordingly, the court held (*id*. at 47, ¶ 25):

> Here, the Noonans invested in annuities through Northwestern, and Northwestern has an obligation to act for the Noonans' and other annuity policyholders' benefit. The policyholders are dependent upon Northwestern's investment decisions and are thus in an inferior position to Northwestern. Consequently, Northwestern owes the policyholders a fiduciary duty.

As repeatedly confirmed by Northwestern itself and demonstrated in the record, all of the rights and duties at issue here must be and are controlled uniformly for all Pre-MN Annuitants by Wisconsin law. *See, ante* at 14-15. As

18

another court pointedly held, it would be "irrational" for a mutual company to argue annuity dividend issues should be adjudicated under disparate state laws. *DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 483, 488 (R.I. 2004). According to Northwestern, application of disparate state law would produce corporate "chaos." Exh. 47-J, p. 13.

The record demonstrates that in all relevant respects Northwestern *in fact treated all* Pre-MN Annuitants uniformly, without any concern for or accommodation to disparate state laws. For example:

- Exhibit 47-A is a compendium of Northwestern's formulae for computing the Pre-MN Annuity dividends annually since the 1985 Change; all apply uniformly for all Pre-MN Annuities nationwide.

- Exhibit 47-B is a similar compilation of Northwestern trustee annual minutes, again confirming the uniform determination.

- Exhibit 47-23 is a Northwestern memorandum dated June 27, 1984, while crafting the 1985 Change. *See, id.*, p. 4327 (referring to "convert[ing] [the Pre-MNs] to a CRA" and making a "switch" of the underlying assets to shorter term instruments and eliminate equities); no concern for or accommodation to disparate state law.

- Exhibit 47-27 is a Northwestern memorandum dated July 16, 1984, confirming Northwestern's illicit motive for the 1985 Change (to eliminate a supposed "side-by-side problem impeding marketing of the new "CRA" product if the Pre-MNs continue to receive portfolio based annuities"); no concern for or accommodation to disparate state law.

- Exhibit 47-33, a Northwestern memorandum dated January 7, 1986, explains how Pre-MN dividends would be computed pursuant to the 1985 Change ("taking the 'gross interest rate' (net of investment expenses) [earned by the new, short-term bond account] and deducting a tax charge and sometimes an expense charge"); disparate state law not a factor. *Id.*, pp. 4705-06.

Accordingly, the state court found (NDoc. 2-27, p. 90):

As of 1 March 1985, NWM stopped selling Pre-MN annuities and they then became a closed block of policies. The "1985 change" and *related conduct of NWM were done as to that block of Pre-MN annuities as a whole.* None of the Pre-MN annuitants were treated separately. (Italics added.)

The state court's post-trial decision also describes the Wisconsin law under which the claim arises (NDoc. 2-27, pp. 49-62), and evaluates the evidence and rules upon numerous issues in light of that law (*id.*, pp. 62-87). Its declarations included that (*Id.*, p. 87):

NWM is subject to Wisconsin Statutes, section 632.62 and other laws of Wisconsin with respect to the determination, allocation and payment through dividends of its divisible surplus to its participating policyholders.

The court further declared (*id.*, p. 88):

The terms of Wisconsin Statutes, section 632.62 (and particularly subsections (2) and (4)) are incorporated as a matter of law into the Pre-MN annuity contracts. That law is unambiguous and is mandatory in that it includes the word 'shall' repeatedly. It requires NWM to determine the divisible surplus, if any, of the Company and then equitably apportion it among the policyholders and then credit to each Pre-MN annuitant an equitable share (called a dividend) of that divisible surplus. Nowhere does the law say that the dividend or divisible surplus is to be paid from a segmented account within the general account portfolio. This statutory law does not allow NWM to unilaterally establish a segmented account within its general account portfolio to exclusively be used to determine the dividend/interest to be paid annually to Pre-MN policyholders. The segmented account would not give the Pre-MN policies a 'full right' to participate in the surplus accumulations of NWM. Also, any segmented dividend would not be an equitable apportionment for the Pre-MN annuities of the NWM 'remaining surplus.'

*See also, id.,* pp. 3, 52-53, 59-60, 66-67, 82-83, 84, 85-87, 89-95.

The claim here arises not only "under" but also "by virtue of" the laws of Wisconsin. CAFA's use of the disjunctive phrase "arising under or by virtue of" the law of a company's state of incorporation establishes a broader prohibition on federal jurisdiction than either part standing alone. *See Brooke Group v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 229 (1993); *United States v. Johnson,* 152 F.3d 618, 625 (7th Cir. 1998) (statutory terms in disjunctive given separate meaning); *United States v. Rosa-Ortiz,* 348 F.3d 33, 38 (1st Cir. 2003) (statutory phrase "by virtue of" suggests causal connection).

The claim in this case exists because of Wis. Stat. § 632.62, as construed in *Noonan I* (Exh. 43). As *Noonan I* and the trial court here both held, the Annuity contracts at issue incorporate that statute and provide the terms the statute requires, by virtue of (because of) which Northwestern has both the contract and fiduciary duties which are the subject of this claim and on which the trial court has made its findings, conclusions and declarations. Accordingly, the claim arises both under and by virtue of Wisconsin law, §§ 1332 (d)(9)(B) and 1453(d)(2) apply and remand is required.

## B. Wisconsin Choice of Law Principles Confirm that Wisconsin Law Applies.

The foregoing analysis establishes that this court need not conduct a choice-of-law analysis to determine that CAFA jurisdiction does not extend to the claims here. However, such an analysis confirms that this Wisconsin-centered controversy is controlled by Wisconsin law. Northwestern itself has repeatedly confirmed that

only one state's law can govern its dividend-related conduct, that a dividend dispute such as this is "a quintessential internal affairs matter" and that it must be "governed by the law of the domicile [here, Wisconsin]."  *See ante* at 15.

This Court applies Wisconsin choice of law rules in diversity cases.  *Auto-owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009). Under Wisconsin choice-of-law analysis "the law of the forum should presumptively apply unless it becomes clear that non-forum contacts are of greater significance." *Drinkwater v. Am. Fam. Mut. Ins.,* 290 Wis. 2d 642, 658, 714 N.W.2d 568 (Wis. 2006);  *State Farm Mut. Auto Ins. Co. v. Gillette,* 251 Wis. 2d 561, 588, 641 N.W.2d 662 (Wis. 2002).

Wisconsin identifies ("groups") a state's "contacts" and measures their "significance" to the issues in the case as follows:

(a) Grouping of Contacts.

In determining the extent of a state's relevant contacts with a case based on a contract, Wisconsin examines: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."  *Handal v. American Farmers Mutual Casualty Co.*, 79 Wis. 2d 67, 73-74, 255 N.W.2d 903 (1977)).  "These contacts are to be evaluated according to their relative importance with respect to the particular issue."  *Schlosser v. Allis-Chalmers Corp.,* 86 Wis. 2d 226, fn 2, 271

N.W.2d 879, 886 (Wis. 1978) *(Schlosser II)* (quoting Restatement (Second) of Conflict of Laws (1971), § 188). The "particular issue" here, of course, is whether determining annual dividends pursuant to the 1985 Change breaches the obligations flowing from Wis. Stat. § 632.62.

The Annuities themselves establish the place of contracting: they were accepted and "Executed at Milwaukee, Wisconsin" (*See* Annuity attached to Exh. 42, p. 1). The entire "negotiation" contact is subsumed in the fact that the Annuity is a contract of adhesion, designed and drafted in Wisconsin. Northwestern's home office also controls the application process ("No agent is authorized to make or alter contracts or to waive any of [Northwestern's] rights or requirements" – Application, ¶ 7) and the Annuity and application (also drafted by Northwestern) "constitute the entire contract." Annuity, § 1.5. Wisconsin is also the place of performance. The divisible surplus and dividends are determined here and credited (technically, used to purchase paid-up additions) "at the Home Office." *Id.* The relevant subject matter (Northwestern's investment and risk management which generate its financial performance, surplus and dividends) is in Wisconsin. The parties' relationship is centered in Wisconsin where the Annuities are administered and all relevant conduct regarding adopting the 1985 change and subsequent determining and crediting of dividends has occurred.

The contact of any putative foreign state(s) is limited to sales presentations where non-Wisconsin Annuitants resided at the time of application. But no claim is made here that any misrepresentation or other wrongdoing occurred at the time of

23

sale.[12] The 1985 Change and its implementation occurred *after* the sale of all Pre-MN Annuities – they were already in force in 1985 and, with the Change, became a "closed block."

Since all disputed issues focus on internal conduct occurring in Wisconsin by a company incorporated, domiciled and headquartered here, the above grouping of contacts on its face weighs heavily in favor of applying Wisconsin law to control this case. All the more when their significance to the issues is measured under Wisconsin law.

(b) Wisconsin's Five Factor "Significance" Analysis.

In addition to "grouping contacts" related to contract issues, Wisconsin applies a "*Heath* factor" test for both contract and tort issues to determine the significance of a given state's contacts with respect to the issues in the case. The following five "significance" factors are given in *Heath v. Zellmer,* 35 Wis. 2d 578, 596-604, 151 N.W. 2d 664 (Wis. 1967). *Schlosser II,* 86 Wis. 2d at 240-41.

*(1) Predictability of Results. Heath* holds (35 Wis. 2d at 596):

Predictability is one of the choice-influencing considerations that deserves special emphasis in *consensual* arrangements. In those cases, since a legal relationship is entered into by prearrangement, it is imperative that the parties know that their rights will be the same, irrespective of the forum, and that their agreement will have the same consequences, irrespective of where the contract is performed or where a dispute in regard to it is resolved. Predictability is an essential in the law of . . . trusts . . . [and] contracts . . . It has little or no relevancy

---

[12] Some evidence of sales presentations was admitted at the *LaPlant* trial for the limited purpose of showing Northwestern's understanding of its duties. NDoc. 2-27, pp. 64-65.

to any automobile accident or other tort that was never intended or planned.  (Italics in original.)

Uniform application of a single standard as it relates to dividend obligations (necessarily Wisconsin law) is of special importance in the "consensual arrangement" between Northwestern and Annuitants, and leads to all parties having the same expectations.[13]

*(2)  Maintenance of Interstate and International Order, and (3) Advancement of the Forum's Governmental Interests.*  These key factors are discussed together because the considerations involved overlap.

As discussed above, a mutual insurance company with multi-state operations *must* make its dividend determinations on a uniform basis, just as Northwestern argues elsewhere.  *See, ante* at 14-15.  To do otherwise would be "irrational" (*DeCesare,* 852 A.2d at 488) and create "chaos" (Northwestern at Exh. 47-J, p. 13). As a Wisconsin mutual Northwestern *must* operate under Wis. Stats. § 632.62, which is "incorporated as a matter of law into the pre-MN annuity contracts" (NDoc. 2-27, p. 88), and which *Noonan I* held *controls the issues in this case.  Noonan I,* 276 Wis. 2d at 41-44, ¶¶ 11-17.  Manifestly, Wisconsin has a paramount interest in the

---

[13] One would not expect dividend or fiduciary obligations to change when an Annuitant changes residency, or, for example, that a Northwestern agent based in Dubuque selling Pre-MN Annuities in Iowa, Wisconsin and Illinois would be selling the same Annuities but three different investments.  Annuitants know they are investing in a Wisconsin company and that they are entitled to participate in the profits generated by its Wisconsin-based business conduct.

proper application of *its* statute to *its* mutual insurance company. *Heath* holds (35 Wis. 2d at 598):

> If it appears that the application of forum law will advance the governmental interest of the forum state, this fact becomes a major, though not in itself a determining, factor in the ultimate choice of law.

As a matter of comity and maintenance of interstate order, other states respect Wisconsin's paramount interest by deferring to Wisconsin law under the "internal affairs doctrine," as defined by the Supreme Court in *Edgar v. MITE Corp.*, 457 U.S. at 645. Because determination and payment of dividends involve a core relationship a corporate entity has with its owners, they are unquestionably within the scope of this doctrine.

Under this doctrine, the law of Wisconsin is applied by all other states on dividend issues precisely to achieve the uniformity on such issues required for "maintenance of interstate and international order," and in recognition of Wisconsin's "governmental interests" as Northwestern's primary regulator and under whose laws Northwestern was created and must operate. Notably, other states not only would defer to Wisconsin law under this doctrine, they also have a specific interest in *not* applying a rule which would *diminish* the rights of their citizens.

The predominance of Wisconsin's governmental interest is demonstrated in *Beloit Liquidating Trust v. Grade,* 270 Wis. 2d 356, 677 N.W.2d 278 (Wis. 2004), which applied Wisconsin law *irrespective* of the internal affairs doctrine because the

only contact with the foreign state was the bare fact that it was the state of incorporation. *Id.,* at 376, ¶ 27. Since the corporation's domicile and headquarters were in Wisconsin, substantially all of the business conduct occurred in Wisconsin, and the relationship with its officers was Wisconsin-based, all *Heath* factors called for application of Wisconsin law. *Beloit* therefore (varying from the "state-of-incorporation" version of the internal affairs doctrine)[14] emphasized Wisconsin's strong governmental interest in applying its law to companies domiciled and headquartered here.

(4) *Simplification of the Judicial Task.* As in *Schlosser II,* "surely the judicial task is simplified by applying the law of a single forum to this controversy." 86 Wis. 2d at 241. Choosing Wisconsin law "will always simplify [the] judicial task, except where Wisconsin law is complex or uncertain as compared to that of the other jurisdiction." *Drinkwater,* 290 Wis. 2d at 662.

*(5) Application of the Better Rule of Law. Noonan I* expressly considered possible options and specifically chose the rules to be applied on the principal issues (determination of dividends and the existence of a fiduciary duty) – a *de facto* determination of "the better rule of law" to be followed. Exh. 43, 276 Wis. 2d at 43-48, ¶¶ 17-27.

---

[14] A common version of the internal affairs doctrine is that the law of the state of incorporation governs internal affairs. *See* Black's Law Dictionary, quoted in *Beloit,* 270 Wis. 2d at 367, fn. 8. However, some states apply a modified version (*e.g.,* the version argued elsewhere by Northwestern), under which the law of the "domicile" would control. These distinctions are academic here because Northwestern is incorporated, domiciled and headquartered in Wisconsin.

All five of *Heath*'s choice-influencing considerations confirm the uniform application of Wisconsin law to the issues in this case.

### C.     No Choice-of-Law Problems Arise from *Noonan II.*

Northwestern has argued that in the *Noonan* case the Court of Appeals ruled that multiple state laws would apply to some issues in the case. That argument is incorrect, without foundation and irrelevant.

The *Noonan* decision referred to ("*Noonan II,*" Exh. 44) did not rule that multiple state laws would apply. In fact it expressly stated "we need not extensively analyze [the choice-of-law factors] nor conclude which state's law will apply[,]" *id.,* fn 6, and further that "which [choice-of-law] test to follow is less than clear" and that "we need not resolve the choice-of-law in Wisconsin today." *Id.,* at ¶ 14, fn 7. As the District Court in *Becher v. Northwestern Mutual* expressly pointed out, *Noonan II* did *not* rule as Northwestern claimed (Exh. 47-F, pp. 7-8), and specifically held that "the Court is satisfied that this case 'solely' involves claims that 'arise[] under or by virtue of' the laws of Wisconsin. *See,* 28 U.S.C. § 1332(d)(9)(B)." Exh. 47-F, p. 7.

Moreover, the record has eliminated the factual foundation for Northwestern's principal theories. As noted this court examines the jurisdictional issues *on the record as it now stands.* Northwestern's "most significant" (Exh. 44 at p. 13) theory for possible application of disparate state laws was parol evidence. In Exh. 47-M, Northwestern abandoned the parol evidence theory when its argued

28

basis turned out to be pure fiction.[15]  Its equitable defenses (estoppel, waiver or laches) are likewise ruled out by the record.  The full and fair notice needed to trigger these defenses was *dis*proved at the trial (NDoc. 2-27, pp. 79, 86, 90, 93), and Northwestern's active concealment of the 1985 Change (NDoc. 2-27, pp. 86, 90, 93) precludes equitable defenses under the clean hands doctrine.  *Zinda v. Krause,* 191 Wis. 2d 154, 174, 528 N.W. 2d 55 (Ct. App. 1995) ("One of the fundamental tenets of equity is that a person seeking equitable relief must come to the court with clean hands").

Finally, Northwestern's earlier assertions are irrelevant to deciding whether to remand.  As noted, in determining whether the claim arises under or by virtue of Wisconsin law, the Court examines only the claim itself, not possible affirmative defenses or other collateral issues.  *See ante* at 17; *see Politt* and the holdings in *Greenwich* and *Himmel* ("in determining whether removal is warranted the focus[] of the inquiry is on the source of the right that the plaintiff's claim seeks to enforce[.]").  Here, the Annuitants seek to enforce their "full right" to dividends based on Northwestern's divisible surplus – the source of that right is Wis. Stat. § 632.62 and the contract language implementing that statute's mandate, all as construed by the Wisconsin Court of Appeals in *Noonan I.*

---

[15] The record established that (i) agent contracts prohibit agents from varying the terms of any policy; (ii) Annuitant applications expressly prohibit parol evidence; and (iii) the Annuities themselves are expressly fully integrated and prohibit parol evidence.  *See* Exh. 47-N, ¶¶ 3-6 and Annuity attached to Exh. 42, ¶ 1.5 and attached Application, ¶ 7.

Thus, the law is clear that since Wisconsin law governs the interpretation of the Annuity contracts, it also governs the validity of affirmative defenses to claims of breach, including waiver and estoppel. *Sybron Transition Corp. v. Security Ins. Co. of Hartford,* 107 F.3d 1250, 1255-57 (7th Cir. 1997); *Hystro Products, Inc. v. MNP Corp.,* 18 F.3d 1384, 1393 (7th Cir. 1994); *Utica Mut. Ins. Co. v. Klein & Son, Inc.,* 157 Wis. 2d 552, 556-59, 460 N.W. 2d 763, 765-66 (WI App. 1990); Restatement of the Law of Conflicts (Second), §205 Comments e, f.

## CONCLUSION

This case was commenced, tested by pre-trial motions, tried and decided in state court. Under express prohibitions in CAFA federal subject matter jurisdiction does not exist and removal was improper. To complete the adjudication of this case it should be remanded to state court where it belongs.

Dated October 28, 2011.

/s/ George P. Kersten
George P. Kersten
One of the Attorneys for the Plaintiffs
State Bar No. 1008099

**Plaintiffs' Counsel:**

David Boies III
Timothy D. Battin
Ian Otto
Mark J. Schirmer
Christopher Le
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor
Fairfax, VA   22030
Tele: (703) 764-8700
Fax: (703) 764-8704

Jeffrey A. Bartos
GUERRIERI, CLAYMAN, BARTOS &
   PARCELLI, PC
1625 Massachusetts Avenue, NW
Washington, DC 20036
Tele: (202) 624-7400

George P. Kersten (1008099)
E. Campion Kersten (1007641)
Kenan J. Kersten (1008505)
KERSTEN & MCKINNON, S.C.
11518 N. Port Washington Rd.
Suite 104
Mequon, WI   53092
Tele:(262) 241-0054
Fax:   (262) 241-5935

Mark B. Pollack, WI Bar # 1010557
GALANIS, POLLACK, JACOBS &
   JOHNSON, S.C.
839 N. Jefferson Street, Suite 200
Milwaukee, WI  53202
Tele: (414) 271-5400