# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARLEEN M. LAPLANT, on her own behalf
and on behalf of a class similarly situated,

        Plaintiffs,

     v.                                 Case No. 2:11-CV-00910

THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY, a
Wisconsin mutual insurance corporation,

        Defendant.

## PLAINTIFFS' REPLY BRIEF AND SUPPLEMENTAL APPENDIX IN SUPPORT OF MOTION FOR REMAND

# Table of Contents

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. THIS CLASS ACTION SOLELY INVOLVES A "CLAIM" THAT "RELATES TO" NML'S "INTERNAL AFFAIRS." . . . . . . . . . . . . . . . 2

    A. There Is No Claim of Improper Marketing. . . . . . . . . . . . . . . 4

    B. Plaintiffs Make No Claim Unrelated to Dividends . . . . . . . . . . 5

II. THIS CLAIM "ARISES UNDER OR BY VIRTUE OF" WISCONSIN LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. The Choice-of-Law Provision in the 1983 Policy Loan Agreement Does Not Apply to the Issues in This Case. . . . . . . 6

    B. NML's Other Choice-of-Law Arguments Are Also Without Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# T<small>ABLE OF</small> A<small>UTHORITIES</small>

## <u>Cases</u>

*Altman v. Central of Georgia Ry. Co.,*
    254 F.Supp. 167 (D.D.C. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*American Home Assur. Co. v. Merck & Co., Inc.,*
    629 F.Supp.2d 436 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Anwar v. Fairfield Greenwich Ltd.,*
    676 F.Supp.2d 285 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Becher v. Northwestern Mut. Ins. Co.,*
    No. CV 10-6264 PSG, 2010 U.S. Dist. LEXIS 135854
    (C.D. Cal. Dec. 9, 2010) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*Beloit Liquidating Trust v. Grade,*
    2004 WI 39, 270 Wis. 2d 356, 677 N.W. 2d 298. . . . . . . . . . . . . . . . . . . . . 9-11

*Bezich v. Lincoln Nat'l. Life Ins. Co.,*
    2010 U.S. Dist. LEXIS 30785 at *3 (N.D. Ind. March 29, 2010
    (unpublished). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Boomsma v. Star Transp. Inc.,*
    202 F.Supp.2d 869 (E.D. Wis. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cole v. Equitable Life Assurance Soc'y.,*
    271 A.D.2d 271 (N.Y. App. Div. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Confold Pacific, Inc. v. Polaris Industries, Inc.,*
    433 F.2d 952 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 14

*Cooper v. Berkshire Life Ins. Co.,*
    810 A.2d 1045 (Md. Ct. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Danbeck v. Am. Family Mut. Ins. Co.,*
    2000 WI App 26, 232 Wis. 2d 417 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*DeCesare v. Lincoln Benefit Life Co.,*
    852 A.2d 474 (R.I. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dennis v. Aetna Life Ins. & Annuity Co.,*
    873 F.Supp. 1000 (E.D. Va. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Drinkwater v. American Fam. Mut. Ins. Co.,*
    2006 WI 56, 290 Wis. 2d 642, 714 N.W.2d 568 . . . . . . . . . . . . . . . . . . . . . . 12

*ECA Acquisitions, Inc. v. Mat Three LLC,*
    No. 09 Civ. 590 (AKH), 2009 U.S. Dist. LEXIS 75501
    (S.D.N.Y. May 1, 2009) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Edgar v. MITE Corp.,*
    457 U.S. 624 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 11

*Finch v. Southside Lincoln Mercury, Inc.,*
    2004 WI App. 110, 274 Wis. 2d 719, 685 N.W. 2d 154 (Wis. App. 2004) . . . 10

*Friese v. Superior Court,*
    36 Cal.Rptr.3d 558 (Cal. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Greenwich Fin. Servs. v. Countrywide Fin. Corp.,*
    603 F.3d 23 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6

*Grimsdale v. Kash N' Karry Food Stores, Inc.,*
    564 F. 3d 75, 78 (1st Circuit 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hart v. FedEx Ground Package Sys.,*
    457 F.3d 675 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Heath v. Zelmer,*
    35 Wis. 2d 578, 151 N.W.2d 664 (Wis. 1967) . . . . . . . . . . . . . . . . . . . . . 10-14

*Hejsak v. Great-West Life & Annuity Ins. Co.,*
    331 F.Supp.2d 756 (W.D. Wis. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Henderson v. U.S. Bank,*
    615 F.Supp. 804 (E.D. Wis. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Himmel v. Bucyrus Int'l. Inc.,*
    Case No. 10-C-1104 (E.D. Wis. August 23, 2011) . . . . . . . . . . . . . . . . . . . . 12

*Hitachi Med. Sys. Am., Inc. v. Branch,*
   Case No. 5:09-cv-01575, 2010 U.S. Dist. LEXIS 19405,
   (N.D. Ohio March 4, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Huber v. Martin,*
   127 Wis. 412, 105 N.W. 1031 (Wis. 1906) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hunker v. Royal Indem. Co.,*
   57 Wis. 2d 588 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Harnischfeger Industries, Inc.,*
   293 B.R. 650, 662 (Bankr. D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Sprint-Nextel Corporation,*
   593 F.3d 669 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In Re Textainer P'ship Sec. Litig.,*
   2005 WL 1791559 at *5 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Indep. Petrochemical Corp. v. Aetna Casualty & Surety Co.,*
   674 F.Supp. 354 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Katz v. Gerardi,*
   552 F.3d 558 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lancer Ins. Co. v. Landers Explosives, Inc.,*
   2009 U.S. Dist. LEXIS 47990, 6-7 (W.D. Ky. June 5, 2009) . . . . . . . . . . . . 14

*Love v. Blue Cross and Blue Shield of Georgia,*
   439 F. Supp.2d 891 (E.D. Wis. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Madden v. Cowen & Co.,*
   576 F.3d 957 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*McCormick v. Excel Corp.,*
   413 F. Supp. 2d 967 (E.D. Wis. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McDermott Inc. v. Lewis,*
   531 A.2d 206 (Del. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nagy v. Riblet Products Corp.,*
   79 F. 3d 572 (7th Circuit 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Noonan v. The Northwestern Mut. Life Ins. Co. ("Noonan I"),*
    276 Wis. 2d 33, 687 N.W.2d 254 (Wis. App. 2004) . . . . . . . . . . . . . . . *passim*

*Noonan v. The Northwestern Mut. Life Ins. Co. ("Noonan II"),*
    App. No. 2005AP1683, 298 Wis. 2d 247, 726 N.W.2d 356
    (Wis. App. Nov. 16, 2006) (unpublished) . . . . . . . . . . . . . . . . . . . . . . *passim*

*Payne v. Churchich,*
    161 F.3d 1030 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Powers v. Lycoming Engines,*
    272 F.R.D. 414 (E.D. Pa. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Puglisi v. Citigroup Alt. Invs. LLC,*
    No. 08 CV 9774 (NRB), 2009 U.S. Dist. LEXIS 45411
    (S.D.N.Y. May 29, 2009) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Rubin v. Mercer Ins. Group, Inc.,*
    No. 10-6816 (MLC), 2011 U.S. Dist. LEXIS 15181 (D. N.J. Feb. 15, 2011)
    (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Santamarina v. Sears, Roebuck & Co.,*
    466 F.3d 570 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Serrano v. 180 Connect, Inc.,*
    478 F.3d 1018 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Smith v. Northwestern Mut. Life Ins. Co.,*
    2011 U.S. Dist. LEXIS 104394 (E.D. WI
    Case No. 11-C-71, September 13, 2011) . . . . . . . . . . . . . . . . . . . . . . . 3, 13

*Solberg v. Metro. Life Ins. Co.,*
    50 Wis. 2d 746, 185 N.W.2d 319 (1971) . . . . . . . . . . . . . . . . . . . . . . . 10

*State Farm Mut. Auto. Ins. Co. v. Sup. Ct. of Los Angeles County,*
    114 Cal. App. 4th 434 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Stupak v. Hoffman-LaRoche, Inc.,*
    287 F.Supp.2d 968 (E.D. Wis. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tri-Clover, Inc. v. DSO Sanitary Supply Co.,*
    No. 97-C-1290, 2000 U.S. Dist. LEXIS 9981 (E.D. Wis. Mar. 31, 2000) . . . 13

*Wussow v. Commercial Mechanisms, Inc.*,
    97 Wis. 2d 136, 293 N.W. 2d 897 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## Statutes

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 11, 15

28 U.S.C. § 1453 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 11, 15

Wis. Stat. § 632.62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 12

## Other Authorities

Restatement (Second), Conflicts of Laws, § 192. . . . . . . . . . . . . . . . . . . . . . . . 10

Restatement (Second) Conflicts of Laws, §§ 302 and 304 . . . . . . . . . . . . . . . 3, 9

Restatement (second) of contracts, § 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Key to References

Exhibit \_\_\_\_  (with number) refers to an exhibit filed by plaintiffs.  Exhibits 42 through 45 were filed as attachments to the Declaration accompanying plaintiffs' opening brief.  Exhibits 46 and 47 were filed with plaintiffs' opening brief in separate binders.  Exhibits 48 through 58 are being filed with the declaration accompanying this reply brief.  Where appropriate, these citations are to a binder and a tab within the binder (e.g., Exhibit 46-1).

Exhibit \_\_\_\_  (with letter) refers to an exhibit attached to Attorney Maggard's Declaration accompanying defendant's brief in opposition to plaintiffs' motion to remand.

NBr.\_\_\_\_  refers to a page in defendant's brief in opposition to plaintiffs' motion to remand.

NDoc.\_\_\_\_  refers to an exhibit attached to the defendant's removal notice.  The references given are to the computer-imprinted document and page numbers, rather than to the number given in defendant's removal

notice and declaration, which may not match the computerized numbering.

NML          refers to the defendant The Northwestern Mutual Life Insurance Company.

PBr.___      refers to a page in plaintiffs' opening brief.

# INTRODUCTION

The Class's dividend-related rights are a core matter of corporate governance. The purpose of 28 U.S.C. § 1332(d)(9)(B) was to exclude such "quintessential" internal affairs matters from CAFA jurisdiction. Congress emphasized this policy choice by repeating the (d)(9)(B) exclusion in the removal statute and making remand orders under § 1453(d)(2) non-appealable. *See,* PBr. 12-14.

NML argues that a choice-of-law provision in a non-germane 1983 agreement rules out Wisconsin law for non-Wisconsin Annuitants. That issue was *litigated* and *decided* against NML *in this case*. NML also attempts to miscast this case as involving improper marketing and thus not related to the Company's "internal affairs." NML's arguments are defeated by the record and contradicted by positions it took earlier.

NML accuses plaintiffs of sandbagging by pleading a Wisconsin-only claim for declaratory judgment but now seeking a national class and damages. However,

- It is NML, not the plaintiffs, that is attempting to flee the Wisconsin court system by this improvident removal.

- Plaintiffs moved to expand the Class because discovery and a full trial eliminated the bases for NML's objections to a national class.[1]

- In any event, the sandbagging charge is irrelevant. If this case comes within CAFA's "internal affairs" provisions, remand is required.

---

[1] NML abandoned its "most significant" argument for disparate state law, parol evidence. *See* PBr. 28-29 and fn 15. It suggests it was not required to prove its supposed equitable defenses (estoppel, waiver or laches) at the *LaPlant* trial. NBr. 8, fn. 7. But those defenses were eliminated by two *threshold* points that *were* proved and found by the court in this case: (i) they were all predicated on alleged notice to the Annuitants of the 1985 Change, which was *dis*proved; and (ii) active concealment and unclean hands were proved, barring the defenses. *See* PBr. 28-29.

PBr. 15-20 presents the evidence which, with the Circuit Court Findings, Conclusions and Declarations, controls this motion. NML does not challenge that record. Instead, it runs in a circle, arguing "the remand motion turns on issues of fact" (NBr. 13) after arguing that those "factual and legal conclusions. . . are irrelevant to the resolution of Plaintiff's motion for remand[.]" NBr. 8, fn 5. NML identifies no genuine issue of fact "pertinent to jurisdiction." *Hart,* 457 F.3d at 682.[2] Any alleged burden is met and this motion presents a question of law: on the record as it comes to this court, do §§ 1332(d)(9)(B) and 1453(d)(2) exclude CAFA jurisdiction and removal?

The Seventh Circuit's caution against unduly expansive interpretation of CAFA jurisdiction in *In Re Sprint-Nextel Corp.*, 593 F.3d at 673, is repeated in *Greenwich Fin. Servs. v. Countrywide Fin. Corp.*, 603 F.3d 23, 32 (2ⁿᵈ Cir. 2010):

> While . . . Congress dramatically expanded federal jurisdiction over class actions through CAFA, this generalized legislative purpose cannot override the clear meaning of §§ 1332(d)(9) and 1443(d), which plainly allow some large class actions to remain in state court. If Congress meant the consideration of a class action's importance to the nation as a whole to trump these limiting provisions, it would have indicated that intent.

## I. THIS CLASS ACTION SOLELY INVOLVES A "CLAIM" THAT "RELATES TO" NML'S "INTERNAL AFFAIRS."

Despite NML's efforts to splinter and mischaracterize plaintiffs' claim, this is a classic corporate governance case: the core issue is whether NML violated its dividend obligations to the company's owners.

---

[2] NML's discussion of burden-of-proof evades the question: burden to prove *what*? *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 681-82 (7ᵗʰ Cir. 2006) *does* answer that question: the burden is to prove "the contested factual assertions that are pertinent to the jurisdictional issue[,]" noting plaintiff's right to develop *proof* of "facts relevant to the court's jurisdiction." *See*, *In re Sprint-Nextel Corp.*, 593 F.3d 669, 673-76 (7ᵗʰ Cir. 2010). Also, NML misreads *Serrano* and *Madden,* which were correctly interpreted by the U.S. Dist. Court in remanding *Becher v. Northwestern Mut. Ins. Co.* (C.D. Cal. 2010) (Exhibit 47-F, p. 4-5).

NML does not dispute that: (a) Pre-MN Annuitants, as participating policyholders, are owners of NML;[3] (b) "internal affairs" as used in CAFA means what *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) says it means: matters "peculiar to the relationship among or between the corporation and its current officers, directors and shareholders" (NBr. 22, fn 18); and (c) this includes issues involving a mutual's dividends to participating policyholders, as held in cases such as *State Farm,* 114 Cal. App. 4th at 442-43, often relied on by NML elsewhere.[4]

NML cannot escape the effect of these principles. In *Smith v. Northwestern,* No. 11-C-71, 2011 U.S. Dist. LEXIS 104394 (E.D. Wis., Sept. 13, 2011), NML *successfully* distinguished dividend cases such as *Noonan* [and thus *LaPlant*]. NML did so by arguing *Smith* did not involve NML's internal affairs because it was acting as a lender, not an activity "peculiar to the corporate entity" such as distributing divisible surplus to owners through dividends. *Id.* at *19.[5]

Plaintiffs here are on the other side of that distinction. As NML argued in *Smith* and elsewhere, distributing divisible surplus to the owners through dividends *is* an activity "peculiar to the corporate entity" and at the very core of the

---

[3] *See*, cases cited at PBr. 2, fn. 3 (holding that the relationship of participating policy owners to a mutual insurance company is equivalent to a stockholder's relationship to a stock corporation); *see also*, Exhibit 48 (NML Annual Report stating that NML "is owned by more than 1.7 million policyowners" and, that "Dividends are a way in which you share in the improved results of your company's operations.")

[4] *See*, *State Farm, Hitachi, Harnischfeger, Altman* and *Friese* cited at PBr. 14; *see also*, RESTATEMENT (SECOND) CONFLICTS OF LAWS, §§ 302 and 304.

[5] The California court in *Papadakis* also accepted NML's argument that Wisconsin law should apply, but denied NML's *forum non conveniens* motion because *it* could apply Wisconsin law under the internal affairs doctrine. Exhibit 47-H, p. 15. In *Heretick*, NML incorrectly combined its internal affairs argument (requirement for application of Wisconsin law) with a primary jurisdiction theory and argued these were jurisdictional. Exhibit 47-J, p. 5. The court did not reach the issue.

relationship between the corporation and its owners.  Since that is the subject matter of the claim here – manifestly a "claim" that "relates to" NML's "internal affairs" – NML attacks strawmen: it attempts to recast plaintiffs' claim as "misleading marketing" and other "claims" outside its internal affairs, and then cites cases (*e.g.,* *ECA Acquisitions*, *Anwar* and *Puglisi*) relating to the claim as recast.  This disinformation is contradicted by NML's own previous descriptions of the case.

**A.      There Is No Claim of Improper Marketing.**

There was never any "claim," finding or declaration of  improper marketing. NML's sales presentations and illustrations were not misleading or otherwise improper and were never in dispute.  They correctly described the dividends in fact provided when the Annuities were sold  and thereafter until March 1985.  *See* Exhibit 42 (complaint), ¶ 24.  Contrary to NML's misrepresentation (NBr. 17), the trial court never made a declaration of "purported mismarketing," just as there was never any claim that it occurred.  Evidence of agent sales presentations and dividend "illustrations" based on NML's overall investment portfolio was admitted for the limited purpose of showing NML's own (correct) understanding of its dividend obligations.  NDoc. 2-27 at 64-66, 87.

The *only* claim here arose *after* the Annuities were sold and *after* years of proper dividends when in 1985 NML changed the fundamental investment character of the Annuities (the "1985 Change") – *thereafter* crediting merely interest generated by a short term bond account rather than portfolio-based dividends.  NML's earlier description of the *LaPlant* claim contradicts its present argument (Exhibit 49):

LaPlant's Complaint seeks relief amounting to a declaration that Northwestern Mutual is liable for breach of contract and breach of fiduciary duty because of a determination made in 1985 concerning its methodology for allocating dividends to certain annuities.

NML's post-trial description of the case belies its argument as well (Exhibit 50):

At its core, this case concerns whether Northwestern Mutual had the discretion to modify its methodology for determining annual dividends for the Pre-MN fixed annuity policyholders ("Annuitants").

## B.    Plaintiffs Make No Claim Unrelated to Dividends.

NML attempts to parse the Annuitants' claim into discrete acts of misconduct. In fact, the "failure to give notice of the change in dividend calculations," "willful cover-up of the change" and dealings with New York regulators on dividends were all part of a single course of conduct violating the company-owners' *rights relating to dividends*, no less so because the conduct was "willful and intentional."[6]

*Greenwich*, 603 F.3d at 31, rejected the very argument NML makes here:

Defendants' argument hinges on a strained reading of the words "[t]his section shall not apply to any class action that solely involves. . ." Needless to say, the phrase "solely involves" cannot be stretched so far as to limit the exception in §§ 1332(d)(9) and 1453(d) to class actions that raise no collateral issues and for which there are no affirmative defenses. Defendants' interpretation of the prefatory phrase "solely involves" as strictly limiting CAFA's jurisdictional exceptions is especially unpersuasive in the light of the expansive language of the exceptions themselves. *Sections 1332(d)(9)(A)* and *1453(d)(1)* exempt from CAFA jurisdiction any claim "*concerning* a covered security," (emphasis added), while *§ 1332(d)(9)(B)* and *(C)*, as well as *§ 1453(d)(2)* and *(3)*, use the equally broad phrase "relates to." If Congress had intended these provisions to apply only to class actions that involve no legal issues extraneous to the primary claim, they would have used language that was more clearly limiting.[7]

_____

[6] Punitive damages is a remedy, not a "claim," *Wussow v. Commercial Mechanisms, Inc.*, 97 Wis. 2d 136, 149, 293 N.W. 2d 897 (1980) and is not before the court. If it becomes an issue, it will be sought as a remedy for NML's intentional disregard of company-owners' dividend rights.

[7] Other cases cited by NML would also rule out its "too narrow" interpretation of CAFA: *Bezich v. Lincoln Nat'l. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 30785 at *3 (N.D. Ind. March 29, 2010 (unpublished)); *Rubin v. Mercer Ins. Group, Inc.*, No. 10-6816 (MLC), 2011 U.S. Dist. LEXIS 15181 at *3 (D.N.J. Feb. 15, 2011) (unpublished).

NML offers the sophistry that there is "nothing peculiar to corporate governance" about the abstract concepts of breach of good faith, fair dealing and fiduciary duty. NBr. 14-15. But the concrete facts implicating these legal principles in this case all relate to NML's violation of contract and fiduciary duties in distributing net profits to owners as dividends – conduct "peculiar to the corporate entity." As well, "[C]ourts have consistently applied the internal affairs doctrine to claims for breach of fiduciary duty." *In Re Textainer P'ship Sec. Lit.,* 2005 WL 1791559 at *5 (N.D. Cal.) (cited by NML, NBr. 22, fn 18).

## II.     THIS CLAIM "ARISES UNDER OR BY VIRTUE OF" WISCONSIN LAW.

This requirement is satisfied because the "plaintiff[s'] claim seeks enforcement of a right that arises from" Wis. Stat. § 632.62 and the annuity terms required by that statute. *Greenwich,* 603 F.3d at 29.

### A.     The Choice-of-Law Provision in the 1983 Policy Loan  Agreement Does Not Apply to the Issues in This Case.

NML's main argument is that a choice-of-law provision in an agreement signed by some Annuitants in 1983 (relating to the effect of policy loans on dividends), which is *not* the subject of this case, controls issues arising from NML's conduct in and after 1985 violating Wis. Stat. § 632.62 and the contract terms required thereby (the 1985 Change), which *is* the subject of this case. That is contrary to *Noonan I* and *II* and, conclusively, this argument was *litigated* and *decided* against NML *in this case.*[8]

*Noonan I* quotes both the original and amended language (as it actually reads, not as NML presents it here), and treats those who agreed to the 1983 amendment

_____

[8] To bolster its argument here, NML (NBr. 19), using misleading ellipsis, presents the choice-of-law provision as if it were included in the Annual Dividends provision, which it is not. *See,* fn 9.

and those who did not *identically*.  Exhibit 43, ¶ 3 et seq.  In the *Noonan II* appeal,

NML confirmed twice "there is **no** [sic] choice-of-law provision in the policy at issue"

(Exhibit 51, pp. 12-13 and 20) and the court so found (Exhibit 44, p. 6, fn 5):

> The parties do not contest that the policies at issue do not have a choice of law
> provision, and thus choice of law must be determined by case law.

NML now says the *Noonan II* court so ruled without having the 1983

amendment agreement before it.  NBr. 4, fn. 2.  The truth is, that court had it *in four*

*places, including two NML appendices*.[9]

Opposing certification *in this case*, NML *raised the very issue it repeats here*,

pointing out that many Wisconsin purchasers resided in other states when they

signed the 1983 agreement.  Exhibit 56, pp. 2, 19-20.  Reversing its earlier position, it

argued, as it does here, that the choice-of-law statement on the 1983 amendment

form applied not only to what was being changed (basing policy value on net after

deducting loans) but also to what was unchanged (the statute and dividend

requirements at issue here).  Exhibit 50, pp. 2, 19-20.  The Wisconsin court *rejected*

the argument and certified the proposed Class (NDoc. 2-7, p. 45):

> Nothing in the language of the [1983] amendment changed the contract
> language that is here being addressed in this case as to the allocation of the
> divisible surplus of Defendant.  The language of the 1983 amendment did not
> affect the rights and duties at issue here.  That language is unchanged.

This rejection of NML's principal argument for disparate state law is the law of

this case.  *Payne v. Churchich*, 161 F.3d 1030, 1037-38 (7th Cir. 1998); *McCormick v.*

---

[9] *See,* Exhibits 52 (1983 agreement before the court and quoted by it in the *Noonan I* appeal),
53 (same document page 90 in appendix to NML's brief opposing interlocutory appeal), 54 (same
document including in item 16 in *Noonan II* appellate record) and 55 (same document appearing
again in appendix to NML's brief). Moreover, *NML* certainly knew of the 1983 agreement and the
*Noonan II* quote shows the *parties* did not contest the absence of a relevant choice-of-law provision.

*Excel Corp.*, 413 F.Supp.2d 967, 970 (E.D. Wis. 2006).  There is no "compelling reason" for this court to  revisit the issue.  *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  The trial evidence cited at PBr. 16, 19 shows the court's ruling was correct:  NML has *never* made dividend determinations on a state-by-state basis.

Moreover, NML's proposed findings after the trial *in this case* contradict the argument it now makes (Exhibit 57, underlining added):

2.   The Pre-MN annuities at issue in this lawsuit ("Annuities") provide as follows regarding annual dividends paid to participating policies ("Contract"):

### 4.1 Annual Dividends (Original)

This policy shall share in the divisible surplus, if any, of the Company.  This policy's share shall be determined annually and credited as a dividend.  Payment of  the first dividend is contingent upon payment of the premium or premiums for the second policy year and shall be credited proportionately as each premium is paid.  Thereafter, each dividend shall be payable on the policy anniversary.

### 4.1 Annual Dividends (Amended)

This policy will share in the divisible surplus of the Company.  This surplus is determined each year.  The policy's share will be credited as a dividend on the policy anniversary.  This dividend will reflect the mortality, expense and investment experience of the Company and will be affected by any policy indebtedness during the policy year.

3.   With regard to the issues before the Court in this action, there is no material difference between the original provision and the amended provision of the Contract.[10]

While this alone destroys NML's 1983 agreement argument here, Wisconsin's important governmental interest and public policy favoring application of its law to

---

[10] The same point was made in plaintiffs' findings of fact (Exh. N at 54-55).  NML's wrongful assertion this was a "concession" the claim is based on the 1983 amendment is another distortion of the record.

the interpretation and implementation of its statute (Wis. Stat. § 632.62) and

regulation of a domestic insurance company would prevail over a choice-of-law

provision in any event. *Henderson v. U.S. Bank*, 615 F.Supp. 804, 808-810 (E.D.

Wis. 2009) (important Wisconsin public policy overrides choice-of-law provision) and

*Love v. Blue Cross and Blue Shield of Georgia*, 439 F. Supp.2d 891 (E.D. Wis. 2006)

(same).[11]

## B. NML's Other Choice-of-Law Arguments Are Also Without Merit.

NML acknowledges "Congress intended CAFA's internal affairs exception to

incorporate the internal affairs doctrine as articulated in *Edgar v. MITE Corp.*, 457

U.S. 624, 645 (1982)," NBr. 22, fn 18, quoting the Court:

> "only one State should have the authority to regulate a corporation's internal
> affairs - matters peculiar to the relationships among or between the
> corporation and its current officers, directors and shareholders – because
> otherwise a corporation could be faced with conflicting demands." Id. at 645,
> citing Restatement (Second) Conflicts of Laws § 302.

Nor does NML dispute Wisconsin's important interest in applying *its* law to

corporations chartered and domiciled here. Yet NML presents a choice-of-law

analysis which leads to the absurd result that virtually every state would apply

Wisconsin law to NML's internal affairs except Wisconsin, which would apply the

laws of 49 other states.

That howling error stems from a misreading of *Beloit Liquidating Trust v.*

*Grade,* 2004 WI 39, 270 Wis. 2d 356, 677 N.W.2d 298. *Beloit* in fact demonstrates

---

[11] There is an additional fatal error in NML's argument. Assuming *arguendo* NML's current
interpretation of the 1983 agreement were reasonable, the interpretation given to the agreement by
both sides and the Court of Appeals in *Noonan* and by the *LaPlant* trial court in ruling against NML
would also be reasonable. The resulting ambiguity (two alternative reasonable interpretations)
would be resolved against NML. *Danbeck v. Am. Family Mut. Ins. Co.*, 2000 WI App 26, ¶ 6, 232 Wis.
2d 417, 422 (2001).

Wisconsin's important interest in applying its law to corporations domiciled and headquartered here. The company in *Beloit* was incorporated in Delaware and the bankruptcy proceedings were there. However, the court held that applying Delaware law would be "officious intermeddling." *Id* at 374-5, ¶ 24. Because the domicile, headquarters and center of the activities at issue were all in Wisconsin (as here), Wisconsin law was held to apply *whether or not* strict application of the internal affairs doctrine might provide otherwise. *Id*. at 374-8, ¶¶ 24-32. *Beloit* thus stands for the importance of applying Wisconsin law, *not* that of other states. *Confold Pacific, Inc. v. Polaris Industries, Inc.,* 433 F.3d 952, 957 (7th Cir. 2006), citing *Beloit*, affirmed this Court's application of Wisconsin law because the company's "principal place of business" was "more important." *See also, Finch v. Southside Lincoln Mercury, Inc.,* 2004 WI App. 110 at ¶ 29, 274 Wis. 2d 719, 742-44, 685 N.W.2d 154, (Wisconsin law governed corporation headquartered in Wisconsin, where most relevant acts occurred, citing *Beloit* and *Heath).*[12]

For the routine coverage issues in *Solberg v. Metropolitan Life* and the cases relied on at NBr. 25-26, Wisconsin would follow the *first* part of RESTATEMENT (SECOND), CONFLICTS OF LAWS, § 192.[13] But NML omits the relevant § 192 language:

---

[12] On the then-limited record, the *Noonan II* court (at ¶ 13) was "not convinced *Beloit* mandates Wisconsin law apply uniformly in this case." But *Noonan II* compared *Noonan* with *Beloit* only as necessary to determine whether the trial court's discretionary manageability concerns over the mere presence of choice-of-law issues were reasonable, so that the court declined to analyze the *Heath* factors or otherwise determine choice-of-law. *Id.* at fn 6. With the now fully-developed record which removes parol evidence concerns and the basis for NML's affirmative defenses, and upon a Heath-factor analysis actually conducted, the application of Wisconsin law to the issues in this case *is* clear. PBr. 24-28.

[13] *Solberg,* interpreting the term "parent" in life insurance policy; *Hejsak v. Great-West Life*, interpreting contestability clause, and *Dennis v. Aetna Life,* interpreting provision allowing assignment. *Cooper v. Berkshire Life* and *Cole v. Equitable* were both fraudulent marketing cases, in which the conduct at issue *occurred at the point of sale,* unlike the facts here.

. . . unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

RESTATEMENT § 6 is a version of the *Heath* factors, and § 4 (1) defines "local law" as a state's law "exclusive of its rules of Conflict of Laws."

Here, "the particular issue" involves distributing divisible surplus to owners – an issue *Edgar* held must be controlled by the law of "only one state" lest the corporation "be faced with conflicting demands" (what NML has called corporate "chaos"). 457 U.S. at 645; *see* PBr. 25 and Exhibit 47-J, p. 3. To suggest otherwise would be "irrational." *DeCesare v. Lincoln Benefit Life Co.,* 852 A.2d 474, 483 (R.I. 2004). Consistent with *Beloit,* RESTATEMENT (SECOND) CONFLICTS OF LAW § 304 applies § 302 and the *Edgar* principles to shareholder dividends:

> The local law of the state of incorporation will be applied to determine the right of a shareholder to participate in . . . the division of profits . . . except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the shareholder and the corporation, in which event the local law of the other state will be applied.[14]

Congress intended that CAFA jurisdiction not extend to cases such as this. *Katz v. Gerardi,* 552 F.3d 558, 562 (7th Cir. 2009), referring to the "shall not apply" language in §§ 1332(d)(9) and 1453(d) and the internal affairs exception, bluntly held:

> § 1332(d)(9) has a functionally identical list. This tells us all we need to know. Claims listed in § 1453(d) are not removable.

---

[14] Comment d of § 304 incorporates Comment g of § 302, that in some situations the state of incorporation will have no significant additional relationship with the company or the issue, in which case the law of the state having the greater interest in the determination of the particular issue will apply. This was exactly the court's rationale in *Beloit,* 270 Wis. 2d at 373-378, ¶¶ 23-32. *See also, McDermott Inc. v. Lewis,* 531 A.2d 206, 213-219, cited by NML, which explains that whether it be the state of incorporation or a state having greater interests in the issue, under conflicts, and even constitutional principles "the law of *one* state governs the relationships of a corporation to its stockholders . . . in matters of internal corporate governance. The alternatives present almost intolerable consequences . . . ." *Id.* at 216 (emphasis added).

That result is confirmed by Wisconsin's choice-of-law rules. NML avoids genuine choice-of-law analysis, asserting *Noonan II* "decided" disparate state laws would apply. NBr. 2, 4, 23, 24 and 28. Not so. *Noonan II* expressly *declined* to decide the choice-of-law issues. *See,* PBr. 28, and Exhibit 44, p. 8 fn 6 ("We need not extensively analyze each factor under *Heath v. Zelmer* [citation omitted] nor conclude which state's laws will apply to which issues in this case.") and Exhibit 44, p. 8, fn 7 ("we need not resolve the state of choice of law in Wisconsin today."). The same assertion by NML was recognized as wrong and rejected by the district court in remanding *Becher v. Northwestern Mut. Ins. Co.,* Exhibit 47-F, p. 8.

The "first rule" in Wisconsin choice-of-law is that "the law of the forum should presumptively apply unless it becomes clear that non-forum contacts are of greater significance." *Drinkwater v. American Fam. Mut. Ins. Co.,* 2006 WI 56, ¶ 40, 290 Wis. 2d 642, 658, 714 N.W.2d 568; *Confold Pacific, Inc.,* 433 F.3d at 957. Attempting to displace Wisconsin law, NML ignores *Himmel v. Bucyrus Int'l. Inc.* and *Greenwich*: "[I]n determining whether removal is warranted 'the focus[]' of the inquiry is on the source of the right that the plaintiffs' claim seeks to enforce." NDoc. 240, p. 3.

NML's *depecage* argument is defeated by its own *Stupak* case, 287 F.Supp.2d at 972, which holds *depecage* does not apply where claims are "inextricably intertwined."[15] Since the inquiry's focus here is "on the source of the right" plaintiffs' seek to enforce, the issues are not only "inextricably intertwined;" the source of the right is identical: Wis. Stat. § 632.62 and the Annuity terms which that statute

---

[15] *Id.,* citing *Boomsma v. Star Transp. Inc.,* 202 F.Supp.2d 869, 878 (E.D. Wis. 2002) and *Hunker v. Royal Indem. Co.,* 57 Wis. 2d 588, 603 (1973) limiting use of this principle to "appropriate" cases.

requires.  Again NML contradicts itself, having successfully argued in *Smith* that the same law must apply to both contract and fiduciary duty claims where the fiduciary duty arises from the relationship created by the contract.  Exhibit 58.[16]

In challenging plaintiffs' grouping of contacts, NML attempts to impeach the "place of contracting" stipulated on page 1 of its own contract  ("Executed at Milwaukee, Wisconsin on the Date of Issue").  *Tri-Clover, Inc. v. DSO Sanitary Supply Co.,* No. 97-C-1290, 2000 U.S. Dist. LEXIS 9981 (E.D. Wis. Mar. 31, 2000) (the place of contracting is the place where the insurance contract is accepted); *cf. American Home Assur. Co. v. Merck & Co., Inc.,* 629 F.Supp.2d 436, 443-44 (S.D.N.Y. 2004).  Here, the Annuitant's application is the offer and acceptance is made by issuance of the policy.  *See,* RESTATEMENT (SECOND) OF CONTRACTS, § 50 (2) (acceptance by performance of what is requested in the offer).[17]

It is preposterous for NML to cite *Indep. Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 674 F.Supp. 354, 356 (D.D.C. 1987) for the proposition that the place of "negotiation" or contracting "emerge" as the controlling contacts here.  In language omitted from NML's quotation, the court found that case turned on "the issue of non-disclosure in negotiating and forming the contract."  *Id.* at 356.  For the  contract of adhesion involved here, no relevant "negotiation" could or did occur.  *Powers v. Lycoming Engines,* 272 F.R.D. 414, 422 (E.D. Pa. 2011) ("the place of negotiation is

---

[16] In fact, whether the contract and fiduciary duties are analyzed separately or together, the result is the same, since the same *Heath* analysis would require application of Wisconsin law.  *See* PBr. 24-28.

[17] Also, Northwestern's suggestion (NBr. 26) that the Annuity contracts provide coverage becomes effective upon delivery and payment of premium takes out of context language from the application form referring only to limited circumstances where the initial premium is not paid when the application is signed.

not relevant when the parties did not negotiate the warranties"); *Lancer Ins. Co. v. Landers Explosives, Inc.,* 2009 U.S. Dist. LEXIS 47990, 6-7 (W.D. Ky. June 5, 2009) (place of contract or of negotiation not determinative where no "negotiation" occurred "beyond the submission of an application and the offer and acceptance of a policy."). Indeed, both the Annuities and the agent contracts *prohibited* negotiating contract terms. See PBr. 29, fn 15. Moreover, the conduct at issue occurred *after* the sale, as shown above.

NML's argument that the significance of other contacts is ambivalent ignores the fact that the issues here focus entirely on how and why NML acted as it did at its home office in Wisconsin (its domicile and the place of relevant performance), pursuant to contract terms required by Wisconsin Statutes and drafted by NML. If applying Wisconsin law is not required solely for the reasons set forth above, NML's "grouping of contacts" exercise demonstrates the need for a *Heath* analysis (which it avoids) to resolve which "group" is the more "significant" to the issues in this case. *Heath v. Zellmer,* 35 Wis. 2d 578, 595-96, 151 N.W.2d 664 (1967); *Henderson,* 615 F.Supp.2d at 809. Such an analysis is particularly appropriate where a grouping of contacts alone may not resolve a question, and is required under Wisconsin law when the issues are not purely contract but also sound in tort (breach of fiduciary duties).

NML's arguments cannot survive a *Heath* analysis. *See* PBr. 24-27. This being a consensual arrangement, the "predictability" factor weighs heavily in favor of Wisconsin law. PBr. 24-25. And, dispositive here, are these *Heath* factors: interstate comity (general acceptance of the internal affairs doctrine) and Wisconsin's important governmental interest in applying its statute to corporations it has created and

regulates. These plainly mandate application of Wisconsin law. The claim in this case arises under and by virtue of the laws of Wisconsin which establish the dividend rights this action seeks to enforce.

## CONCLUSION

NML's repeated self-contradiction and the remarkable liberties it has taken with the record and case authorities bespeak desperation to salvage a plainly improvident removal. 28 U.S.C. §§ 1332(d)(9)(B) and 1453(d)(2) require remand.

Dated December 7, 2011.


_____s/ George P. Kersten_____
George P. Kersten (WI Bar No. 1008099)
One of the Attorneys for Plaintiffs




**Plaintiffs' Counsel:**

David Boies
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tele: (914) 749-8201
Fax: (914) 749-8300
Email: dboies@bsfllp.com

George P. Kersten (1008099)
E. Campion Kersten (1007641)
Kenan J. Kersten (1008505)
KERSTEN & MCKINNON, S.C.
11518 N. Port Washington Rd.
Suite 104
Mequon, WI 53092
Tele:(262) 241-0054
Fax: (262) 241-5935
Email: george@kerstenlaw.com

David Boies III
Timothy D. Battin
Mark J. Schirmer
Christopher Le
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor
Fairfax, VA  22030
Tele: (703) 764-8700
Fax: (703) 764-8704
Email: tbattin@straus-boies.com

Jeffrey A. Bartos
GUERRIERI, CLAYMAN, BARTOS &
   PARCELLI, PC
1625 Massachusetts Avenue, NW
Washington, DC  20036
Tele: (202) 624-7400
Fax: (202) 624-7420
Email: jbartos@geclaw.com

Mark B. Pollack (1010557)
GALANIS, POLLACK, JACOBS &
   JOHNSON, S.C.
839 N. Jefferson Street, Suite 200
Milwaukee, WI  53202
Tele: (414) 271-5400
Fax:  (414) 271-5571
Email: mpollack@gpjlaw.com

**Certificate of Service**

I certify that a true copy of the foregoing was served via the ECF system which will send a notice of electronic filing to defendant's counsel of record.

      s/George P. Kersten
      George P. Kersten