# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

MARLEEN M. LAPLANT, on her own behalf
and on behalf of a class similarly situated,
      Plaintiffs,

    v.                                      Case No. 11-CV-00910

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,
      Defendant.

---

## DECISION AND ORDER

Plaintiff, Marleen M. LaPlant, the holder of an annuity insurance policy issued by defendant, Northwestern Mutual Life Insurance Company, brought an action in state court on behalf of a class of Wisconsin policyholders and, after a two week court trial, prevailed. Subsequently, plaintiff moved to expand the class to include policyholders from other states at which point defendant removed the case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff now moves to remand.

The facts that gave rise to the suit are as follows: defendant is a mutual insurance company incorporated in Wisconsin. As a mutual company, it is owned cooperatively by its policyholders. Under Wis. Stat. § 632.62, defendant issued "participating" policies to members of the putative class. Section 632.62(2) requires that such policies give the policyholders the right to participate in the mutual company's profits. For a time, defendant paid dividends to the policyholders by apportioning its profits. In 1985, however, defendant moved the money invested by the policyholders into a separate short-term bond fund and began paying dividends based on the interest the fund generated. This change resulted

in the policyholders receiving smaller dividends and precipitated the present action alleging breach of contract and breach of fiduciary duty.

Under CAFA, federal courts have jurisdiction over class actions in which at least one class member is a citizen of a state different from a defendant, the class exceeds 100 members and members' claims add up to more than $5,000,000. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012) (*citing* 28 U.S.C. § 1332(d)(2), (d)(5)). Congress enacted CAFA to allow federal courts "to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy." S. Rep. No. 109-14, at 27 (2005). However, CAFA contains exceptions designed to ensure that state courts can adjudicate class actions "that have a truly local focus." *Id.* at 28. One exception, the "corporate governance exception," withdraws federal jurisdiction over a class action that "solely involves a claim that relates to the internal affairs or governance of a corporation . . . and that arises under or by virtue of the laws of the State in which such corporation . . . is incorporated . . . ." 28 U.S.C. §§ 1332(d)(9)(B), 1453(d)(2). The question presented is whether the corporate governance exception requires remand.

Plaintiff has the burden of proof on this issue. *See Appert*, 673 F.3d at 619. I address first whether the claims of members of the putative class relate solely to defendant's internal affairs. This inquiry focuses "on the source of the right that the plaintiff's claim seeks to enforce." *Greenwich Fin. Servs. Distressed Mortg. Fund 3, LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 29 (2d Cir. 2010). "Internal affairs" are "matters peculiar to the relationships among or between the corporation and its current officers,

directors and shareholders." S. Rep. No. 109-14, at 45 (*quoting Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)). In the present case, members of the putative class sue defendant in their capacity as defendant's owners claiming that defendant improperly calculated their dividends and thereby breached its contractual and fiduciary duties to them. The declaration and payment of dividends generally involve the internal affairs of a corporation. *See, e.g.*, *Pittway Corp. v. U.S.A.*, 88 F.3d 501, 503 (7th Cir. 1996); *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 662 (Bankr. D. Del. 2003) (*citing* Restatement (Second) of Conflict of Laws § 302 cmt. e (1971)). Further, claims for breaches of fiduciary duty against a corporation by its shareholders are regularly treated as matters involving internal affairs. *See, e.g.*, *Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 574 (7th Cir. 1996). Thus, the claims of members of the putative class relate to defendant's internal affairs.

Defendant argues that because the state trial court addressed matters other than dividends, including defendant's misleading marketing of policies, failure to give notice of the change in dividend calculation, willful cover-up of the change, deception of New York regulators and punitive damages, the case does not solely involve claims related to its internal affairs. However, the substance of plaintiff's claims does not change merely because the case raises collateral issues or because the state court discussed other wrongdoing by defendant. The phrase "solely involves" should not be read to limit the exceptions under § 1332(d)(9) to class actions that raise no collateral issues. *Greenwich*, 603 F.3d at 31. Other language in the statute such as the phrase "relates to" is fairly broad. *Id.* "If Congress had intended these provisions to apply only to class actions that involve

no legal issues extraneous to the primary claim, they [sic] would have used language that was more clearly limiting." *Id.*

I turn next to whether the claims of members of the putative class "arise[] under or by virtue of" Wisconsin law. The state court held that the Wisconsin policyholders' claims are governed by Wisconsin law. Thus, the question presented is whether Wisconsin law also governs the claims of policyholders who purchased policies elsewhere. Because this is a diversity case, I apply Wisconsin choice-of-law rules to determine the law under which putative class members' claims arise. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Defendant contends that the Wisconsin Court of Appeals held that Wisconsin law does not govern such claims in *Noonan v. Northwestern Mutual Life Insurance Company*, No. 2005AP1683, 2006 WL 3314622 (Wis. Ct. App. Nov. 16, 2006). In *Noonan*, policyholders Daniel and Catherine Noonan brought an action on behalf of all policyholders, but the trial court denied class certification on the ground that a nationwide class action would be unmanageable in part because other states' laws might apply. The problem with defendant's argument is that, although the court of appeals affirmed, it expressly declined to decide which state's law applied and held only that the trial court did not abuse its discretion. *Id.* at *3 n.6. Thus, *Noonan* is not helpful on this issue.

Since Wisconsin has not adopted the internal affairs doctrine, under which the law of the state of incorporation ipso facto governs a corporation's internal affairs, I apply the state's general choice-of-law principles. *Beloit Liquidating Trust v. Grade*, 270 Wis. 2d 356, 373–74 (2004). *Cf. Becher v. Northwestern Mut. Life Ins. Co.*, No. 10-6264, 2010 WL

5138910 (C.D. Cal. 2010) (remanding a parallel lawsuit after concluding that Wisconsin law governed based on California's internal affairs doctrine). I apply the choice-of-law framework used in *Drinkwater v. American Family Mutual Insurance Company*, 290 Wis. 2d 642 (2006), which like the present case involved tightly bound contract and tort claims.

I ask first whether the case has more significant contacts with Wisconsin or the state where the class members purchased their policies. *Id.* at 658. I presume that Wisconsin law applies to lawsuits brought in Wisconsin, "unless it becomes clear that non-forum contacts are of greater significance." *Id.* If it is unclear which state's contacts are of greater significance, Wisconsin courts apply five choice-influencing factors: "(1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id.* "The importance of each factor will vary depending upon the specific facts presented in each case." *Beloit*, 270 Wis. 2d at 375 (*quoting Zelinger v. State Sand & Gravel Co.*, 38 Wis. 2d 98, 106 (1968)).

In the present case, it is unclear which state's contacts are of greater significance. Defendant is located in Wisconsin, and it calculates and pays dividends out of its Wisconsin headquarters. However, the putative class members purchased their policies elsewhere and receive dividends in other states. The alleged breaches occurred in Wisconsin, but the injury occurred elsewhere. Thus, I will consider the choice-influencing factors.

The first factor, "predictability of results," requires me to decide which state's law is more likely to provide the parties with predictable and expected results. *Drinkwater*, 290

5

Wis. 2d at 660. Since defendant is incorporated and located in Wisconsin and plaintiff's suit involves defendant's internal affairs, I conclude that Wisconsin law provides the parties with the more predictable result. Policyholders knew they were investing in a Wisconsin corporation with headquarters in Wisconsin. Applying Wisconsin law ensures that all policyholders will be treated the same regardless of where they purchased their policy, and that defendant will not be subjected to different obligations in different states.

The second factor, "maintenance of interstate and international order," is designed to ensure that "a jurisdiction which is minimally concerned [will] defer to a jurisdiction that is substantially concerned." *Id.* at 661. Here, all the states involved are more than minimally concerned. Wisconsin has an interest in regulating Wisconsin corporations doing business in Wisconsin and the states where policies were purchased have an interest in protecting their citizens. Thus, this factor is neutral.

The third factor is "simplification of the judicial task." Application of Wisconsin law, will almost always simplify the task of a Wisconsin court. *Id.* at 662. Thus, this factor supports applying Wisconsin law unless Wisconsin's law is "complex or uncertain" as compared to that of another jurisdiction. *Id.* Wisconsin contract law is well-developed, and the Wisconsin Court of Appeals has already held that defendant owes policyholders a fiduciary duty. *Noonan v. Northwestern Mut. Life Ins. Co.*, 276 Wis. 2d 33 (Ct. App. 2004) (denying defendant's motion to dismiss the Noonans' individual claims). Thus, applying Wisconsin law would simplify the judicial task.

The fourth factor is "advancement of the forum's governmental interest." As the *Beloit* court noted, "Wisconsin has an interest in having its laws applied to corporations,

and their officers and directors, transacting business within the state." *Beloit*, 270 Wis. 2d at 377. In *Beloit*, the court held that Wisconsin law governed the internal affairs of a Delaware corporation because it was headquartered in Wisconsin and its officers had allegedly breached their fiduciary duty while working in the state. *Id.* The same reasoning applies here. Defendant is incorporated and headquartered in Wisconsin, and, as evidenced by Wis. Stat. § 632.62, Wisconsin has a strong interest in regulating defendant's payment of dividends.

The fifth factor, "application of the better rule of law," requires selection of "the law that most adequately does justice to the parties and has the greatest likelihood of being applicable with justness in the future." *Beloit*, 270 Wis. 2d at 377 (*quoting Heath v. Zellmer*, 35 Wis. 2d 578, 598 (1967)). Wisconsin law best satisfies this requirement. As discussed, applying Wisconsin law ensures that all policyholders will have the same rights and that defendant will not be saddled with different obligations in different states.

For the foregoing reasons, I conclude that Wisconsin choice-of-law principles favor the application of Wisconsin law to the claims of the putative class members. Defendant's final argument is that, regardless of the choice-of-law analysis, some claims are governed by other states' law because in 1983 some policyholders signed an amendment to their contracts, which included language stating that the amendment was "governed by the law of the state in which the owner resides at the time that the Amendment is accepted by the Owner." (Decl. of Joshua D. Maggard Ex. O, ECF No. 14-15.)

Assuming the amendment governs some putative class members' claims, I conclude that the choice-of-law provision contained therein is unenforceable. Parties to a

7

contract can agree to a choice-of-law provision but not "at the expense of important public policies of a state whose law would be applicable if the parties' choice of law provision were disregarded." *Bush v. Nat'l School Studios, Inc.*, 139 Wis. 2d 635, 642 (1987). As discussed, absent the amendment's choice-of-law provision, Wisconsin law would govern the claims in question. Further, applying the laws of other states would undermine important Wisconsin public policies. Specifically, it would prevent Wisconsin from effectively regulating defendant's payment of dividends to participating policyholders. As the *Beloit* court held, Wisconsin has an important governmental interest in regulating the internal affairs of companies headquartered in Wisconsin, and Wis. Stat. § 632.62 makes it clear that this regulatory interest extends to the payment of dividends by defendant as a mutual company. Thus, the choice-of-law provision in the amendment cannot be applied to the claims in the present case.

For the foregoing reasons I find that the proposed expanded class action is within CAFA's corporate governance exception. The action solely involves claims that relate to defendant's internal affairs and the claims arise under Wisconsin law. As a result, this court lacks jurisdiction.

**THEREFORE, IT IS ORDERED** that plaintiffs' motion to remand [Docket #10] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 20th day of August 2012.

s/ Lynn Adelman  
LYNN ADELMAN  
District Judge