# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

---

MARLEEN M. LAPLANT, on her own behalf

and on behalf of a class similarly situated,


Plaintiffs,


v.                                                        Case No. 2:11-CV-00910


THE NORTHWESTERN MUTUAL

LIFE INSURANCE COMPANY, a

Wisconsin mutual insurance corporation,


Defendant.

---

# MEMORANDUM IN SUPPORT OF NORTHWESTERN MUTUAL'S

# MOTION TO DECERTIFY WISCONSIN ONLY CLASS CERTIFIED

# UNDER WISCONSIN RULES

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

ARGUMENT .............................................................................................................................. 5

I.      Legal Standards ............................................................................................................. 5

II.     The Class Should Be Decertified Because the Wisconsin Rule Under Which It Was
        Certified Differs Materially from Federal Rule of Civil Procedure 23 ....................... 6

III.    The Class Does Not Meet the Requirements of Rule 23(a) ...................................... 10

        A.      Plaintiffs Have Not Carried Their Burden to Show Commonality of Questions
                of Law or Fact ................................................................................................. 11

                1.      Multiple states' law would apply ....................................................... 11

                2.      Class members do not share a common injury ................................. 12

        B.      Plaintiffs Have Not Carried Their Burden to Show Typicality and Adequacy .......... 13

                1.      Ms. LaPlant's claims are subject to individual defenses .................. 13

IV.     Plaintiffs Have Not Satisfied Rule 23(b)(2)'s Requirements for an Injunction Class ............. 17

        A.      Putative Class Members Are Not Cohesive .................................................... 17

        B.      Injunctive Relief Is Improper Because It Is Not Final .................................. 17

        C.      Remedies Sought Are Individualized and Do Not Flow to the Class as a Group ..... 18

V.      Plaintiffs Have Not Satisfied Rule 23(b)(3)'s Requirements for a Damages Class ................. 20

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**

*Allison v. Citgo Petroleum Corp.,*
  151 F.3d 402 (5th Cir. 1998) ........................................................................................19

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................................ 10, 13

*American Express Co. et al. v. Italian Colors Rest. et al.,*
  __ S. Ct. __, 2013 WL 3064410, No. 12-133 (June 20, 2013) ...............................8

*Andrews v. Chevy Chase Bank,*
  545 F.3d 570 (7th Cir. 2008) ......................................................................................10

*Barnes v. Am. Tobacco Co.,*
  161 F.3d 127 (3d Cir. 1998) .........................................................................................7

*Bieneman v. City of Chicago,*
  864 F.2d 463 (7th Cir. 1988) ......................................................................................12

*Boelk v. AT & T Teleholdings, Inc.,*
  12-CV-40-bbc, 2013 WL 261265 (W.D. Wis. Jan. 10, 2013) ...................................18

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) .....................................................................................................8

*CE Design Ltd.v. King Architectural Metals, Inc.,*
  637 F.3d 721 (7th Cir. 2011) ......................................................................................13

*Comcast Corp. v. Behrend,*
  133 S. Ct. 1426 (2013) ........................................................................................... 8, 18

*Gene. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) .....................................................................................................8

*Granny Goose Foods v. Brotherhood of Teamsters,*
  415 U.S. 423 (1974) .....................................................................................................5

*Hardin v. Harshbarger,*
  814 F.Supp. 703 (N.D. Ill. 1993) ............................................................................9, 16

*In re Am. Med. Sys.,*
  75 F.3d 1069 (6th Cir. 1996) ......................................................................................13

*In re Matter of Bridgestone/Firestone, Inc.,*
  288 F.3d 1012 (7th Cir. 2002) ................................................................................2, 11

Case 2:11-cv-00910-LA   Filed 07/01/13   Page 3 of 27   Document 44

*In re Motorola Securities Litigation,*
644 F.3d 511 (7th Cir. 2011) ................................................................................ 6, 7

*In re W.R. Grace & Co.,*
398 B.R. 368 (D. Del. 2008) ...................................................................................... 6

*Jamie S. v. Milwaukee Public Schools,*
668 F.3d 481 (7th Cir. 2012) ...................................................................... 17, 18, 19

*Johnson v. Meriter Health Servs. Emple. Ret. Plan,*
702 F.3d 364 (7th Cir 2012) .................................................................................... 19

*Kartman v. State Farm Mut. Ins. Co.,*
634 F.3d 883 (7th Cir. 2011) ......................................................................... 2, 6, 17

*Knight & Bostwick v. Moore,*
234 N.W. 902 (Wis. 1931) ...................................................................................... 15

*Knudsen v. Liberty Mut. Ins. Co.,*
435 F.3d 755 (7th Cir. 2006) .................................................................................... 6

*Koos v. First Nat'l Bank of Peoria,*
496 F.2d 1162 (7th Cir. 1974) ................................................................................ 13

*LaPlant v. The Northwestern Mut. Life Ins. Co.,*
701 F.3d 1137 (7th Cir. 2012) .......................................................................... passim

*Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO,*
216 F.3d 577 (7th Cir. 2000) .................................................................................. 17

*Nolte v. Michels Pipeline Constr. Inc.,*
83 Wis. 2d 171 (1978) .............................................................................................. 8

*Rector v. City and County of Denver,*
348 F.3d at 935 (10th Cir. 2003) .............................................................................. 7

*Redfield v. Continental Cas. Corp.,*
818 F.2d 596 (7th Cir. 1987) .................................................................................... 6

*Robinson v. City of Chicago,*
868 F.2d 959 (7th Cir. 1989) .................................................................................. 16

*Shady Grove Orthopedic Associates, P.A.  v. Allstate Insurance Co.,*
559 U.S. 393 (2010) ............................................................................................ 1, 5

*Siegel v. Shell Oil Co.,*
256 F.R.D. 580 (N.D. Ill. 2008) ............................................................................. 11

Case 2:11-cv-00910-LA   Filed 07/01/13   Page 4 of 27   Document 44

*St. Clare Hosp. of Monroe, Wis. v. Schmidt, Garden, Erickson, Inc.,*
    437 N.W.2d 228 (Wis. Ct. App. 1989) ............................................................... 15

*Szabo v. Bridgeport Machines, Inc.,*
    249 F.3d 672 (7th Cir. 2001) ............................................................................ 12

*Thao v. Midland Nat'l Life Ins. Co.,*
    2012 WL 1900114 (E.D. Wis. May 24, 2012) ......................................... 2, 9, 12

*Wal-Mart Stores, Inc. v. Dukes,*
    131 St. Ct. 2541(2011) ........................................................................... passim

**STATUTES**

28 U.S.C. § 1450 ............................................................................................ 5

Wis. Stat. § 893.57 ....................................................................................... 16

Wisconsin Statute § 803.08 ................................................................... 3, 7, 8

**RULES**

Fed. R. Civ. P. 23 .................................................................................... passim

## INTRODUCTION

Plaintiffs brought this case on behalf of a putative *injunction-only* Wisconsin class pursuant to Wisconsin procedural law, which differs meaningfully from federal procedural law. Plaintiffs have now filed a motion asking this Court to certify a nationwide damages class, but they have not filed any motion asking this Court to maintain the Wisconsin-only injunction class under Rule 23 of the Federal Rules of Civil Procedure. Well-settled precedent requires that this Court decertify the statewide injunction class.

First, the Federal Rules of Civil Procedure govern class actions in federal court. *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). A class action, even one that was first certified under state law, may be maintained in federal court *only if* plaintiffs meet their burden of showing that each of the requirements of Rule 23 of the Federal Rules of Civil Procedure has been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 131 St. Ct. 2541, 2551 (2011) (plaintiff must prove all Rule 23 requirements). And a federal district court has the authority, and obligation, to alter or amend an order granting class certification when it is appropriate to do so before final judgment, which has not been entered here. Fed. R. Civ. P. 23 (c)(1)(C). The state court order, which certified a class under Wisconsin's class certification standards, should be vacated because the Wisconsin-only class cannot meet the more exacting Rule 23 standards.

The class does not meet the requirements of Rule 23(a). As an initial matter, there is no common issue. The class includes all persons who bought Pre-MN annuities in Wisconsin, even if they signed the 1983 amendment outside of Wisconsin. The Seventh Circuit has now ruled that *other states' laws applies* to the class members who signed the 1983 amendment while living outside of Wisconsin. *LaPlant v. The Northwestern Mut. Life Ins. Co.*, 701 F.3d 1137 (7th Cir. 2012). Roughly 100 putative members of the Wisconsin-only class certified by the state court signed the 1983

1

amendment in states outside of Wisconsin. (App. 81, Sales Aff. ¶ 6.)[1] Because multiple laws would apply to the claims of class members, a class action is inappropriate under settled Seventh Circuit precedent. *In re Matter of Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Moreover, that many members of the class have not been injured also defeats commonality. *Thao v. Midland Nat'l Life Ins. Co.*, 2012 WL 1900114 (E.D. Wis. May 24, 2012) (App. 276).

Second, that Ms. LaPlant no longer owns the annuity in question and does not have constitutional standing, that she has released her claims against NM, and that she wants damages rather than injunctive relief, also render her an inadequate representative, requiring that the class be vacated.

Third, the class does not meet the requirements of a Rule 23(b)(2) injunction class, as such a class must be cohesive and "is permissible only when class plaintiffs seek '*final injunctive relief*' that is 'appropriate respecting the class as a whole.'" *Kartman v. State Farm Mut. Ins. Co.*, 634 F.3d 883, 887 (7th Cir. 2011) (citing Fed. R. Civ. P. 23(b)(2)). As discussed, Wisconsin law would not govern the claims of all class members. And the relief sought in the injunctive action would not be final or appropriate for the class as a whole. Nor would the class meet the requirements for a Rule 23(b)(3) damages class, for a host of reasons even beyond the fact that a Wisconsin damages class was not sought or certified: the state court erred in holding that Wisconsin law would govern all class members' claims; it relied on the fact that the case did not include a demand for damages; class members do not share a common injury; individual defenses and damages claims would predominate; and the court did not apply the rigorous predominance analysis that is a prerequisite to certification of a damages class in federal court.

This Court should vacate the state court's certification order.

---

[1] The materials cited in this brief are included in the accompanying appendix and cited as "App." The appendix also includes any unpublished authority cited herein.

2

## FACTUAL BACKGROUND

Ms. LaPlant, who purchased her Flexible Premium Annuity policy on May 1, 1975 and surrendered it on July 3, 2008, brought this case as a statewide class action pursuant to Wisconsin Statute § 803.08 for declaratory relief based on alleged violations of Wisconsin law. (*See* Complaint at 17-21, App. 98-102.) The State Court granted plaintiffs' motion for class certification on October 26, 2009, explaining:

**Plaintiff LaPlant seeks to be designated as "class representative" of a class she defines as follows:**

> *"All persons who (a) purchased a Northwestern Mutual Life Insurance Company Pre-MN Annuity prior to March 1985, (b) were residents of the State of Wisconsin at the time of purchase, and ( c)  did not expressly consent, in writing, to limit or surrender their right to fully participate in Northwestern's divisible surplus during the time that they owned the Annuities. Excluded from the Class are any of Northwestern's officers, trustees, employees, family members, or affiliates."*

(App. 106, 10/26/09 Order at 2.)

Pursuant to this definition, the class included all annuitants who were Wisconsin residents when they purchased their Pre-MN annuities, *regardless of whether they signed the 1983 amendment including its choice-of-law clause while living outside of Wisconsin.* (*Id.*)

Plaintiffs brought, and the state trial court decided, the motion for class certification under Wisconsin Statutes § 803.08, which governs class actions in Wisconsin state courts and does not contain all of the requirements of Rule 23. The Wisconsin statute states as follows:

> *Class actions.* When the question before the court is one of common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

Wis. Stat. § 803.08

3

In granting statewide class certification, the state trial court relied on the limits plaintiffs consciously imposed in their request for an injunction-only Wisconsin class in order to get around prior Wisconsin courts' denials of class certification in this litigation. (App. 137, 148, 10/26/09 Order at 33 ("In any event, the case before us does not seek damages."), 44 ("Wisconsin law alone would apply to situations where the contract was entered into in this state…".) As shown below, those limits are not sufficient to meet the more stringent requirements under Federal Rule 23.

In addition, the state court rejected NM's argument that the 1983 amendment required the application of non-Wisconsin law to class members who lived outside Wisconsin when signing it. (*Id.* at 45-46, App. 149-150.) The Seventh Circuit has now repudiated the state court's holding, ruling that the 1983 amendment is in fact valid and enforceable, and requires application of non-Wisconsin law. *LaPlant*, 701 F.3d at 1141. Even the state court acknowledged that if "the law of another state would be applied," this fact "would, standing alone, be enough to produce the result of unmanageability." (App. 148, 10/26/09 Order at 44.)

The state court also rejected NM's arguments that Ms. LaPlant did not have standing, that an injunctive class was inappropriate because what plaintiffs really wanted was damages, and that class certification was inappropriate because Wisconsin-only claims would still require adjudication of individualized "matters such as damages, determining the date of knowledge of the 'change' and the related statute of limitations, the dates and amounts of policy loans and their repayment, the amount of annuity consideration paid, the total amounts invested, dividends earned and different purchase dates, estoppel, waiver, laches, statute of limitations and accord and satisfaction." (*Id.* at 26, App. 130.)

The state court opinion granting class certification states in multiple places that the class action is not one for damages. In determining that interests among class members did not differ with respect to what outcome they would want, the state court stated that "the case before us does

4

not seek damages under declaratory judgment." (*Id.* at 33, App. 137.) And in rejecting NM's argument that affirmative defenses created individual issues, the court stated that "those asserted defenses relate to damages and that is not a matter before us in this case." (*Id.* at 41-42, App. 145-146.) It is of course now beyond dispute that plaintiffs do seek damages and that damages are in fact the focus of this dispute.

Finally, the Seventh Circuit made clear that "[w]hen this case was removed, Judge Flynn was free to reconsider his own decision" both substantively and procedurally, and that this Court is therefore free to do the same: "The doctrine of law of the case therefore does not prevent the district judge from evaluating both sides' contentions." *LaPlant*, 701 F.3d at 1142

Subsequent to the Seventh Circuit's decision, plaintiffs on March 4, 2013 filed a Motion for an Order Redefining the Class and for Related Relief ("Motion to Certify a Nationwide Class"). Plaintiffs acknowledged in their motion that "the case is now governed by federal class action law." (Motion to Certify a Nationwide Class at 12.) However, plaintiffs did not file a motion asking this Court to maintain under Rule 23 the Wisconsin class certified by the state court under Wisconsin class certification standards. NM filed its opposition motion on July 1, 2013 (*See* Northwestern Mutual's Opposition to Motion to Certify a Nationwide Class, filed herewith).

## ARGUMENT

### I.      Legal Standards

While state court orders and rulings remain effective until they are formally set aside by the federal district court pursuant to 28 U.S.C. § 1450, interlocutory state court orders receive no greater force or effect than they would have obtained had the case remained in state court. *LaPlant*, 701 F.3d at 1142; *Granny Goose Foods v. Brotherhood of Teamsters*, 415 U.S. 423, 436-37 (1974). Because this action is now in federal court, Federal Rule of Civil Procedure 23 rather than the Wisconsin Rule of Civil Procedure governs, as plaintiffs concede. *See Shady Grove Orthopedic Associates, P.A. v. Allstate*

5

*Insurance Co.*, 559 U.S. 393 (2010); *see also In re W.R. Grace & Co.*, 398 B.R. 368 (D. Del. 2008) (decertifying under Rule 23 a class that had been certified in state court).

Federal courts appropriately reconsider procedural rulings made in state court prior to removal. *Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 605 (7th Cir. 1987) (reversing district court for keeping in place a state court ruling that relied on a state rule of procedure); *see also Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 758 (7th Cir. 2006) (CAFA "provides for federal resolution of the plaintiffs' claims, so the district court need not (and should not) give any weight to the state judge's order of default and the scope of the class certification. These and all other questions are open to independent resolution in the federal forum."). Such reconsideration is especially appropriate with respect to class certification, where Rule 23(c)(1)(C) requires courts to assess at all times whether class certification remains appropriate. *In re Motorola Securities Litigation,* 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation").

## II. The Class Should Be Decertified Because the Wisconsin Rule Under Which It Was Certified Differs Materially from Federal Rule of Civil Procedure 23

Under Rule 23(a), the party seeking certification has the burden to prove that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

The party seeking certification must then also show that the proposed class satisfies one of Rule 23(b)'s three requirements—most frequently, subsection (b)(2) governing injunction classes and subsection (b)(3) governing damages classes. "[C]ertification of a class under Rule 23(b)(2) is permissible only when class plaintiffs seek 'final injunctive relief' that is 'appropriate respecting the class as a whole.'" *Kartman*, 634 F.3d at 886. Where "the ultimate relief sought is money damages"

6

plaintiffs must meet the Rule 23(b)(3) requirements for a damages class including that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action would be both manageable and "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*; Fed. R. Civ. P. 23(b)(3).

Under Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Courts have an obligation to reassess class certification, and in fact may even do so *sua sponte* on appeal, if it is apparent that class certification was inappropriate. *See In re Motorola Securities Litigation,* 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation"); *Rector v. City and County of Denver*, 348 F.3d at 935, 949 (10th Cir. 2003) (de-certifying class on appeal based on lack of class representatives' standing); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998) ("district courts are required to reassess their class rulings as the case develops").

Wisconsin Statute § 803.08, the state class action statute relied on by the state trial court, is different from Fed. R. Civ. P. 23, in its wording as well as its application. Section 803.08 was adopted by the Wisconsin Supreme Court in 1975, two years after the state's rules committee decided not to recommend it. (App. 168, Paul Benson *et al.*, A Call to Reform Wisconsin's Class-Action Statute, 84 Wisconsin Lawyer 9, at p.1 (Sept. 2011) (citing State Bar Civil Rules Revision Committee, Wisconsin Judicial Council, Minutes from May 4, 1973).) Moreover, the Wisconsin Supreme Court has not given meaningful guidance on the application of its class action rule since 1978. (*Id.* at 2 & n.11, App. 169, 171.) The sparse wording of § 803.08 and limited input of the Wisconsin Supreme Court stand in stark contrast to Fed. R. Civ. P. 23's detailed description of the federal requirements for class certification and the guidance of both the United States Supreme Court and the United States Court of Appeals for the Seventh Circuit.

Section 803.08 contains only two explicit requirements, commonality and numerosity, and these are stated in the disjunctive. Wisconsin's courts have added the requirements of adequacy of representation and manageability. *See Nolte v. Michels Pipeline Constr. Inc.*, 83 Wis. 2d 171, 176 (1978). While Wisconsin courts have looked at times to Rule 23 for guidance, they are not bound by Rule 23. Wisconsin decisions unsurprisingly are often inconsistent with federal law.[2]

The standards applied by federal and state courts–as exemplified by the state court's decision here–can be strikingly dissimilar.

The United States Supreme Court has emphasized that a class action is "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013) (citing *Califano v. Yamasaki,* 442 U.S. 682, 700-01 (1979)). And under federal law a class may be certified only "if the trial court is satisfied, after a rigorous analysis," that the requirements of Rule 23 have been met. *Gene. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

The state court here did not mention, let alone apply, the "rigorous analysis" required under federal law or apply federal standards. The state court also emphasized the state's policy in favor of class actions and the public policy favoring joinder of all parties in a declaratory judgment action. (App. 126-127, 10/26/09 Order at 22-23.) By contrast, as the Supreme Court recently reaffirmed in *American Express Co. et al. v. Italian Colors Rest. et al.*, __ S. Ct. __, 2013 WL 3064410, No. 12-133 (June 20, 2013), Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Id.* at *4. (App. 295).

The Wisconsin Supreme Court also has developed the principle of commonality in a manner inconsistent with Fed R. Civ. P. 23(a), with Wisconsin requiring only "'a community of interest

---

[2] As Benson explains, "[c]lass actions are a different animal today than in 1975 and vastly different from when the statutory language of section 803.08 originated. Judges face a dearth of guidance, attorneys face substantial uncertainty, and courts produce inter- and intra-district discrepancies that are justifiable under the current law. It is time to act, by adopting Rule 23 as the class-action law of Wisconsin." (App. 171, Benson at 4.)

8

among [the class members] in the questions of law and fact involved in the general controversy, *or* in the kind and form of relief demanded and obtained by or against each individual member of the numerous body.'" (App. 167-170, 172, Benson at pp. 2-3 & n.26) (citations omitted).) This is in stark contrast to the United States Supreme Court's interpretation of commonality set forth in *Wal-Mart,* 131 S.Ct. at 2551 (2011) (holding that "Rule 23 does not set forth a mere pleading standard," that movant must "affirmatively demonstrate his compliance with the Rule," and that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." (internal quotations omitted)). *See also Thao v. Midland Nat'l Life Ins. Co.*, 2012 WL 1900114, at *4, *10 (where members of the class have not been injured defeats commonality).

Adequacy may be applied differently as well. For example, when addressing whether the proposed class representative, Ms. LaPlant, has constitutional standing to seek an injunction given that she no longer owns the annuity at issue, the state court dismissed the argument—a threshold analysis under federal law—concluding among other things that it would be "a denial of equal protection" to require the class representative seeking an injunction enforcing the policy to be one of the 650+ class members who still actually own the annuity to be the class representative. (App. 143, 10/26/09 Order at 39.) This is in stark contrast to federal law that a class cannot be certified with a representative who lacks standing to seek injunctive relief. *See Hardin v. Harshbarger*, 814 F.Supp. 703, 708 (N.D. Ill. 1993).

Wisconsin's class action statute on its face is unitary, containing one standard for all class actions. Rule 23, by contrast, contains different provisions for injunction and damages class actions. As a result, a Wisconsin court's analysis of an injunction class is different from the analysis that would be done under federal procedural law. Here, the state court was dismissive of the fact that plaintiff at core wanted damages rather than an injunction and that an injunction would not end the

9

litigation, focusing instead on the fact that plaintiff sought only an injunction in its formal pleading. (App. 130-131, 10/26/09 Order at 26-27.) The analysis in federal court would of course be very different. *See infra* at §IV (setting out the appropriate analysis under Rule 23(b)(2) and an explanation of why (b)(2) certification would be inappropriate here).

Finally, as Fed. R. Civ. P. 23(b)(3) expressly states, a damages class may not be certified in federal court unless "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."[3] This predominance requirement, which is even more stringent than commonality, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997), is entirely absent from the language of the Wisconsin statute, and consequently was never even considered by the state court when certifying the class.

Accordingly, based solely on the differences between the Wisconsin and federal class certification statutes, the state court's order certifying a class should be vacated pursuant to Rule 23(c)(1)(C).

## III. The Class Does Not Meet the Requirements of Rule 23(a)

Class certification is inappropriate unless plaintiffs prove the requirements of Rule 23(a) have been met. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). Plaintiffs must show that common issues of law or fact exist. This means among other things that the putative class members "have suffered the same injury," not merely that they "have all suffered a violation of the same provision of law." *Id.* at 2550-51.

---

[3] Wisconsin's class action statute also does not have a "superiority" requirement as set forth in Rule 23. The state court applied an analysis of whether "the economic realities of the case augur for or against a class action?" (App. 164, 10/26/09 Order at 60.) The state court did not analyze whether a class action would be appropriate as a federal court would under the superiority analysis, which would lead to a different result. A class action is not superior given the number of individual issues that would remain and given the fact that individuals could in fact bring their own claims. *See, e.g., Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008). In any event, the foundation of the state court's class certification ruling was infected by the erroneous assumption that the 1983 amendment was invalid as a matter of law and that only Wisconsin law would apply. That alone requires decertification of the class.

Where multiple states' laws apply, plaintiffs cannot meet the commonality burden. *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 583 (N.D. Ill. 2008). Plaintiffs with different claims under different laws do not share common issues of law.

And under Rule 23(a) Plaintiffs must also show that the class representatives have standing, that their claims are typical of the class, and that their interests are not at odds with the interests of other class members. Plaintiffs cannot meet any of these burdens here.

### A. Plaintiffs Have Not Carried Their Burden to Show Commonality of Questions of Law or Fact

#### 1. Multiple states' law would apply

The state court held that Wisconsin law applied to the claims of all class members, rejecting NM's argument that the 1983 amendment required application of the law of the annuitant's state of residency at the time of signing. (App. 149-150, 10/26/09 Order at 45-46.) The Seventh Circuit overruled the state court's finding, expressly holding that the 1983 amendment was valid and that "multiple states' law applies to these contracts." *LaPlant*, 701 F.3d at 1141-1142.

"No class action is proper unless all litigants are governed by the same legal rules." *In re Matter of Bridgestone/Firestone*, 288 F.3d at 1015. "[O]therwise the class representative cannot meet the burden of satisfying the commonality, superiority, and predominance requirements under Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). *Siegel*, 256 F.R.D. at 583 (citing *In re Matter of Bridgestone/Firestone*, 288 F.3d at 1015).

The Wisconsin class includes approximately 100 persons who signed the 1983 amendment while living outside of Wisconsin (in twenty eight different states and foreign countries). (App. 81, Sales Aff. ¶ 6.) Pursuant to that amendment, the law of the states where they resided at the time they signed the amendment—not Wisconsin law—governs their claims. *LaPlant*, 701 F.3d at 1141. On that ground alone, the state court's order of certification must be vacated.

11

## 2. Class members do not share a common injury

Plaintiffs must prove—not just allege—that each class member has suffered the same injury. *Wal-Mart*, 131 S. Ct. at 2551 (plaintiff must prove all Rule 23 requirements, including that the class members have suffered the same injury, even if doing so requires resolving issues relevant to the merits of the underlying claims); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675–76 (7th Cir. 2001) (same); *see also Bieneman v. City of Chicago*, 864 F.2d 463, 465–66 (7th Cir. 1988) (class certification inappropriate where some class members benefitted).

That rule was the foundation of this Court's rejection of class certification in *Thao*. Plaintiffs there argued class certification was appropriate because the insurance company defendant had improperly used the same five factors to set the cost of insurance for the whole class. Recognizing that plaintiff must prove not just a common issue but a common injury, this Court rejected plaintiffs' argument. *Thao*, 2012 WL 1900113 at *7 (App. 280) (citing *Wal-Mart* and other authorities). Because putative class members did not suffer the same injury, they did not share a common grievance and certification was inappropriate. *Id.* at *10 ("The problems identified above show that the class that Thao seeks to represent does not comprise policyholders with a common grievance against Midland."). The same analysis applies here.

LaPlant claims that NM injured her by segmenting the accounts of Pre-MN annuities. But not all class members were financially worse off due to the 1985 Change, and in many cases were financially better off. (*See* App. 38, 29, 33, 71 Moore Rep. ¶¶ 97, 72-76, 81-85; App. 176, 177, Hoyer 5/17/13 Dep. 158:12-17, 161:1-15 (conceding that some putative class members were as much as two-percent better off financially than they otherwise would have been).)

Approximately 680 Wisconsin class members (or ~20% of the Wisconsin class) surrendered or otherwise terminated their policies between the beginning of 1989 and year-end 1993 when the cumulative rate of return in almost all cases would have been higher in the actual world than in the

12

but-for world. (App. 81, Sales Aff.¶ 8; App. 29-31, Moore Rep. ¶¶ 72-76.) These class members do not share a common grievance with Ms. LaPlant and Mr. Williams.

Finally, class members would have made a variety of decisions were they presented notice and an opportunity to consent. What, if any, impact the 1985 Change would have had on an individual class member requires, as a matter of economics and consumer behavior science, an individual inquiry, as explained in the reports of Professor Dhar and Professor Moore submitted in NM's Opposition to the Motion to Certify a Nationwide Class and again offered here in support of the motion to vacate. (App. 1, Moore Rep.; App. 179, Dhar Rep.)

## B. Plaintiffs Have Not Carried Their Burden to Show Typicality and Adequacy

Class treatment is inappropriate if Ms. LaPlant's claims are not typical of the class or she is an inadequate representative for the class. The adequacy requirement is essential to due process and mandates that a class representative must "possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26 (internal quotations omitted). It ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The related requirement of typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted). Named plaintiffs here are neither typical nor adequate representatives of the putative class.

### 1. Ms. LaPlant's claims are subject to individual defenses

Ms. LaPlant is an inappropriate class representative because she is subject to "an arguable defense unique to the named plaintiff." *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974); *see also CE Design Ltd.v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) (plaintiff "cannot be an adequate representative of the class . . . if it is subject to a defense that

13

couldn't be sustained against other class members").

Ms. LaPlant purchased a flexible premium annuity policy from NM in 1975. (App. 215, LaPlant 9/9/08 Dep. 19:5-7; App. 6, Moore Rep. ¶ 6.) She purchased her policy from one of NM's independent contractor agents. (App. 215, LaPlant 9/9/08 Dep. 19:8-15.) During that process, she and her husband discussed the policy with her agent and no one else. (*Id.* at 21:3-11, App. 217.) After she purchased the policy, Ms. LaPlant and her husband met with her agent a few times. (*Id.* at 22:6-17, App. 218.) She does not remember the substance of those discussions. (*Id.* at 22:15-19, App. 218.) During the time that Ms. LaPlant owned her policy her only expectation was to receive some unstated amount of dividends. (*Id.* at 49:8-50:6, 20:17-21, 72:21-74:21, App. 231-232, 216, 233-236.) However, Ms. LaPlant knew dividends increased the cash value of her policy beyond her contribution. (*Id.* at 71:18-72:3, App. 233-234.)

In 2002, Ms. LaPlant learned about the *Noonan* action. (*Id.* at 37:14-38:5, App. 219-220.) She and her husband contacted counsel for the Noonans (who are her counsel here) to discuss the class action. Ms. LaPlant consulted with them on multiple occasions. (*Id.* at 39:8-40:18, App. 221-222.) Mr. LaPlant kept almost weekly tabs on the *Noonan* litigation and kept Ms. LaPlant apprised of what occurred. (*Id.* at 44:24-47:12, App. 226-229.) She was aware that class certification was denied. (*Id.* at 46:14-25, App. 228.)

Ms. LaPlant voluntarily surrendered and cashed in her policy in July 2008. (App. 6, Moore Rep. ¶ 6.) Her plan was worth approximately $93,000 at the time of surrender. Ms. LaPlant contributed approximately $20,000 of that total, and the remainder was accrued dividends and interest. (App. 285-287, Hoyer Rep. ¶¶ 49-52.) She filed this suit after surrendering her policy on August 26, 2008. Given this history, Ms. LaPlant is subject to defenses that are unique to her.

First, NM has a plaintiff-specific waiver defense against Ms. LaPlant because she surrendered her policy. Section 5.2 of her annuity contract provided:

5.2 CASH SURRENDER

> The Owner may surrender this policy for its cash value less any indebtedness. The policy shall terminate upon receipt at the Home Office of this policy and a *written surrender of all claims*. Receipt of the policy may be waived by the Company.

(App. 244, LaPlant policy § 5.2)(emphasis added).) When she surrendered her policy, Ms. LaPlant signed an agreement expressly "surrendering all or a portion of said contract and all claims thereunder to Northwestern Mutual." (App. 255, Surrender p. 4.) Ms. LaPlant has since acknowledged that she read and understood the provision before signing it. (App. 237-238, LaPlant 9/9/09 Dep. 86:16-87:13.)[4]

When a policyholder surrenders an insurance policy, it by definition results in "the voluntary cancellation of the legal liability of an insurance company by the insured and beneficiary for a consideration." (App. 259, WEBSTER'S COLLEGIATE DICTIONARY 1186-87(10th ed. 1996); *see also* App. 263, BLACK'S LAW DICTIONARY 1458 (7th ed. 1999) (second definition of "surrender" is "[t]he giving up of a right or a claim; RELEASE").)

NM is entitled to prove that Ms. LaPlant's surrender constitutes a valid and enforceable waiver of any and all legal claims she may have had against NM, as there was adequate consideration, a knowing execution, and no fraud or duress. *See, e.g., St. Clare Hosp. of Monroe, Wis. v. Schmidt, Garden, Erickson, Inc.*, 437 N.W.2d 228, 230 (Wis. Ct. App. 1989) ("A release is a contract and is construed as such"); *Knight & Bostwick v. Moore*, 234 N.W. 902, 903 (Wis. 1931) (with regard to contract, "he who will not reasonably guard his own interests when he has reasonable opportunity to do so … must take the consequences. Courts do not exist for the purpose of protecting persons who fail in that regard") (citations omitted)). Having surrendered her claims—a different

---

[4] The state court held that this provision was unenforceable. This Court is free to reconsider that erroneous ruling per the Seventh Circuit's decision. *LaPlant,*. 701 F.3d at 1142.

15

determination than other putative class members made—Ms. LaPlant can hardly be said to be "typical."

Second, Ms. LaPlant is also subject to unique statute of limitations defenses. It is undisputed that Ms. LaPlant knew of the 1985 change by 2002 at the latest. From 2002 through 2008, even though she knew about the 1985 change, and even though class certification was rejected in *Noonan* on June 6, 2005, she did not file suit for over three years. NM is entitled to argue that the applicable statute of limitations has run as to some or all of her claims, in particular her breach of fiduciary duty claim which has a three-year statute of limitations under Wisconsin law. Wis. Stat. § 893.57 (3-year period for intentional torts). NM is also entitled, based on, among other things, specific interactions with her agent, to show NM did not actively conceal the 1985 Change from Ms. LaPlant and hence the limitations period was not tolled prior to the filing of the *Noonan* case.

Finally, because Ms. LaPlant no longer owns an in-force policy, she does not have standing to seek certification of an injunction class. "[T]he Seventh Circuit has held that a class cannot be certified by a representative who lacks standing to bring a claim for injunctive relief, regardless of the existence of compensatory claims." *Hardin v. Harshbarger*, 814 F.Supp. 703, 708 (N.D. Ill. 1993) (citing *Robinson v. City of Chicago*, 868 F.2d 959, 968 (7th Cir. 1989).) The *Hardin* court further explained:

> To invoke Article III jurisdiction, a plaintiff seeking injunctive relief must show that there is some immediate danger of a direct injury. Past exposure to illegal conduct is insufficient to establish a present case or controversy regarding injunctive relief.

*Id.* at 707 (internal citation omitted).

NM's specific defenses against Ms. LaPlant's demand for injunctive relief constitutes yet another reason why she is an inadequate representative.

16

## IV. Plaintiffs Have Not Satisfied Rule 23(b)(2)'s Requirements for an Injunction Class

Plaintiffs also must show that the proposed class meets the requirements of one of the subsections of Rule 23(b). Rule 23(b)(2) requires that the putative class be cohesive, and that an injunction provide final relief. Here, the class certification ruling should be vacated because it does not meet the requirements for an injunction class under Rule 23(b)(2).

### A. Putative Class Members Are Not Cohesive

Rule 23(b)(2) presumes that "the interests of the class members are cohesive and homogeneous", and therefore "the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *id.* ("A suit for money damages, even if the plaintiffs seek uniform, class-wide equitable relief as well, jeopardizes that presumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiff's claim."); *see also Kartman*, 634 F.3d at 893 n.8 ("Where a class is not cohesive such that a uniform remedy will not redress the injuries of *all* plaintiffs, class certification is typically not appropriate."). Here, the putative class seeks compensatory and punitive damages that can only be awarded after each class member's individualized claim is adjudicated according to applicable state laws. The cohesion of the putative class thus disintegrates.

### B. Injunctive Relief Is Improper Because It Is Not Final

An injunction class is inappropriate under Seventh Circuit law unless it is final. "An injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability." *Kartman*, 634 F.3d at 893. As a result, Rule 23(b)(2) "is not appropriately invoked for adjudicating common issues in an action for *damages*." *Id.* at 895 (emphasis in original); *see also Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 499 (7th Cir. 2012); (demand for injunctive or

Case 2:11-cv-00910-LA   Filed 07/01/13   Page 22 of 27   Document 44

declaratory relief must be "final" to "the class as a whole"); *Boelk v. AT & T Teleholdings, Inc.*, 12-CV-40-bbc, 2013 WL 261265 at *12 (W.D. Wis. Jan. 10, 2013) (App. 316) (courts should not certify (b)(2) classes "solely to lay the groundwork for subsequent individualized monetary damage awards").

In attempting to convince the state court that class certification was appropriate, plaintiffs repeatedly emphasized to the state court that they sought only injunctive relief. And the state court decided to focus on the language of the pleadings and accept that this case was about injunctive relief rather than damages, contrary to the factual determination required under Rule 23. *See Comcast*, 133 S. Ct. at 1432; *Wal-Mart*, 131 S. Ct. at 2551-52 (2011). That is of course of no event now, as it is evident from the motion to certify a nationwide damages class exactly what plaintiffs desire from this litigation. But even if plaintiffs' request here for an injunction requiring NM to alter future Pre-MN annuity dividend payments could be considered "prospective," it would affect only the approximately 450 Wisconsin putative class members who have in-force policies today. (App. 81, Sales Aff. ¶ 7) Such prospective relief would be meaningless to the nearly 3,000 Wisconsin putative class members whose policies have terminated.

### C. Remedies Sought Are Individualized and Do Not Flow to the Class as a Group

A (b)(2) class is proper only where a "'single injunction or declaratory judgment would provide relief to each member of the class,'" and not where each class member is entitled to a "'*different* injunction or declaratory judgment against the defendant.'" *Jamie S.,* 668 F.3d at 499 (quoting *Wal-Mart*, 131 S.Ct. at 2557).(emphasis in original). Where the relief sought by the (b)(2) class "would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not

18

be final." *Jamie S.,* 668 F.3d at 499.[5]

Not only must a (b)(2) class seek uniform prospective relief, any monetary relief that it pursues must be uniform. The Supreme Court described appropriate (b)(2) damages as "incidental", *Wal-Mart*, 131 S.Ct. at 2557, meaning "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Id.* (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (emphasis in original)). Such a damages request "'should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.'" *Id.* (quoting *Allison*, 151 F.3d at 415). As discussed in NM'sOpposition to Plaintiffs' Motion to Certify a Nationwide Class, many of the factors weighing against a (b)(2) class are present here—damages are individualized rather than flowing to the class as a whole; additional hearings would be required on the merits of each individual's case, including NM's affirmative defenses applicable to each individual class member; and complex individualized determinations are necessary.[6] While the state court paid short shrift to Seventh Circuit law, this Court is of course bound by it. (*See e.g.,* App. 131-132, 10/26/09 Order at 27-28.) This too justifies dissolving the state court certification order.

---

[5] The substance of each member's claim demonstrates both that damages are at issue and that each claim would require individualized relief. Examples of class members requiring individualized injunctive or declaratory relief abound here. For example, some class members would not benefit from injunctive or declaratory relief at all, including those who have surrendered their policies, as well as the individuals who experienced a net gain from the 1985 Change.

[6] The Seventh Circuit's decision in *Meriter* does not allow a (b)(2) class here. There, the court held that a (b)(2) class was appropriate because the subclasses initially sought only equitable reformation of the pension plan, and any later claim for money damages would require a simple mechanical computation that would be "incidental" to the declaratory and injunctive relief. *Id.* at 371-72. Here, not only are plaintiffs seeking primarily to certify a (b)(3) class, but again, each putative class member's damages requires individualized calculation. Nor can plaintiffs reasonably propose divided certification, meaning a (b)(2) proceeding, and if declaratory relief is granted, a (b)(3) proceeding for damages. Bifurcation is not "optimal if the issues underlying the declaratory and damages claims overlap[]." *Johnson v. Meriter Health Servs. Emple. Ret. Plan*, 702 F.3d 364, 371 (7th Cir 2012). Under the Seventh Amendment, the defendant in a divided-certification case is entitled to have the damages claims tried first, to a jury. *Id.*

19

**V.    Plaintiffs Have Not Satisfied Rule 23(b)(3)'s Requirements for a Damages Class**

Plaintiffs did not seek a damages class before the state court. Indeed, in an effort to obtain class certification plaintiffs repeatedly told the state court they were seeking only an injunction class in an effort to avoid the *Noonan* court's rejection of a damages class. In fact, the state court noted that "[i]n the formal pleadings, [this case] does not seek damages", found in determining that commonality existed that "the case before us does not seek damages under declaratory judgment," and stated in determining that the case was manageable that NM's "asserted defenses relate to damages and that is not a matter before us in this case." (App. 131, 137, 10/26/09 Order at 27, 33, 46.) Now that plaintiffs' true demand for damages has been revealed, it is clear that the underpinning of the state court's determination is gone.  And now that this case is in federal court, the requirements of Rule 23(b)(3) govern. Plaintiffs' failure to meet their burden of showing that those requirements are met and the lack of a rigorous analysis of the requirements for certification of a (b)(3) class independently require that the Wisconsin state class be vacated.[7]

## **CONCLUSION**

For the foregoing reasons, NM respectfully requests that the Court vacate the class certification order of the state court dated October 26, 2009.

---

[7] A variety of factors make a damages class inappropriate, including that multiple laws would govern, that injury would need to be determined on an individual basis, that NM would have individual affirmative defenses that would predominate, and that damages could not be calculated on a class-wide basis using common proof.

20

Dated this 1st day of July, 2013.

By: /s/ Adam Hoeflich
      Adam Hoeflich (*pro hac vice*)

      Attorneys for Defendant
      The Northwestern Mutual Life Insurance Company

Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
Facsimile:  (312) 494-4440
Email:  adam.hoeflich@bbhps.com

Sean C. Grimsley
John M. Hughes
Bartlit Beck Herman Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, CO 80202
Telephone: (303) 592-3100
Facsimile:  (303) 592-3140
Email:  sean.grimsley@bbhps.com
       john.hughes@bbhps.com

Eric J. Van Vugt (Wis. Bar No. 1017336)
Joshua D. Maggard (Wis. Bar No. 1061378)
Quarles & Brady LLP
411 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: (414) 277-5625
Facsimile:  (414) 978-8625
Email:  eric.vanvugt@quarles.com
       joshua.maggard@quarles.com

21

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing was served via the ECF system which will send a

notice of electronic filing to the following: George Kersten, Jeffrey A. Bartos, Mark B. Pollack.

s/ Joshua D. Maggard