UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**MARLEEN M. LAPLANT,**
                **Plaintiff,**

v.                                                  Case No. 11-cv-0910

**NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,**
                **Defendant.**
_____

## **DECISION AND ORDER**

      Plaintiff Marleen LaPlant, the holder of an annuity insurance policy issued by defendant, Northwestern Mutual Life Insurance Company, brought this class action suit alleging that an undisclosed change to certain annuities violated state law. After years of litigation, the parties reached a class action settlement. No class member objected to any provision of the settlement, and I approved the settlement terms in a separate order. Defendant, however, objected to plaintiffs' proposed attorneys' fee award, and I address that issue now.

      The parties settled for a gross settlement amount of $84,000,000, otherwise known as the common fund. They estimate that approximately $1,110,965 will be spent on claims administration costs, leaving a net fund of $82,889,035. Plaintiffs' class counsel has requested 35 percent of this net fund, or $29,011,162. *see Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (stating that administrative costs should not be included in calculating attorneys' fee awards). Class counsel also provided a lodestar analysis as a cross-check to support their assertion that $29,011,162 is reasonable. Defendant does not contest that class counsel are entitled to reasonable fees but argues that the amount

requested is unreasonable. Specifically, it attacks class counsel's lodestar cross-check, arguing that plaintiffs' Milwaukee-based attorneys' hourly rates and hour counts are too high.

In deciding fee levels in common fund cases, a district court must attempt to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). Where a district court waits until the end of litigation to set a counsel's fee, the court must attempt to estimate what the parties would have agreed to had negotiations occurred at the outset of litigation. *Id.* at 693. I have discretion to use either a percentage-of-the-fund approach or a lodestar approach in determining an appropriate fee award. *Cook v. Neidert*, 142 F.3d 1004, 1012–13 (7th Cir. 1998).

Class counsel used the percentage-of-the-fund approach, and I find this method appropriate based on its ease of administration. *See id.* Thus, I will first analyze whether plaintiff's request for 35 percent of the net fund is reasonable given percentage awards in similar cases. I will then cross check the percentage-based fee award with a lodestar analysis to ensure the percentage-based fee award is not excessive in this case. *Id.*

In determining whether the market would have agreed to compensate class counsel 35 percent of recovery, I begin by looking at a recently updated study, Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. Empirical Legal Stud. 248 (2010). Eisenberg and Miller studied 18 years of available opinions involving settlements in class action litigation, with a total sample of 689 common fund cases. Table 7 lists fee percentages in terms of the amount of the class's recovery.

The value of this settlement is $84,000,000, which puts this case in the decile of cases involving settlements between $69.6 million and $175.5 million.[1] The mean fee percentage for recoveries in this decile is 19.4 percent. The standard deviation for this decile is 8.4 percent, which means that fee requests of 11 percent to 27.8 percent are reasonable when viewed against fee awards in cases with comparable recoveries. Based on this data, class counsel's request of 35 percent appears to be above the high end of a reasonable fee.

However, I must also consider the risk that class counsel undertook when they decided to bring this case. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992) (emphasizing the need to adjust attorney fee awards in class action litigation to account for risk). Here, the risk of nonpayment class counsel assumed when it took this case justifies a higher than average fee award. At the time plaintiffs' counsel agreed to bring this suit, an antecedent case had already begun in Wisconsin state court. *See Noonan v. Nw. Mut. Life Ins. Co.*, No. 01-cv-12349 (Milwaukee Cty., Wis. Cir. Ct.). Both the trial court and appellate court in *Noonan* denied class certification, and thus there was a high risk that counsel would not succeed in getting a class certified, in which case the litigation would not have continued. Plaintiffs' counsel also expected defendant to raise numerous legal issues that could have ended this case, including issue preclusion; technical actuarial issues related to establishing liability; the role of various regulators in approving dividend determinations; the nature of defendant's contractual, statutory, and fiduciary duties; and statute of limitations. Finally,

---

[1] When data are presented by decile, they are presented in ten groups of approximately equal number. McGraw-Hill Dictionary of Scientific & Technical Terms 558 (6th ed. 2003). Each decile in Table 7 consists of approximately 69 cases.

this case revolved around defendant's internal conduct that occurred 23 years earlier, and thus plaintiffs' counsel faced a situation where much of the discovery was controlled by defendant and potentially no longer existed. Thus, at the time counsel took this case, this case was very risky.

I also consider the amount of time and effort that went into litigating the case. *See In re Synthroid Mktg. Litig.*, 264 F.3d at 721. Here, the amount of work class counsel put into this case also justifies an above average fee award. Plaintiffs' counsel litigated against defendant simultaneously in Wisconsin, Florida, California, and Washington. *See Krueger v. Nw. Mut. Life Ins. Co.*, No. 10-cv-0128 (N.D. Fla.); *LaPlant v. Nw. Mut. Life Ins. Co.*, No. 11-cv-0910 (E.D. Wis.); *Becher v. Nw. Mut. Life Ins. Co.*, No. BC441982 (L.A., Cal. Super. Ct.); *Reichart v. Nw. Mut. Life Ins. Co.*, No. 10-2-00414-8 (Jefferson Cty., Wash. Super. Ct.).[2] Litigation involved briefing of numerous motions, many of which were brought by defendant; appellate litigation including briefing on a petition for certiorari before the U.S. Supreme Court in the *Krueger* case; a ten-day trial on liability issues in the *LaPlant* case;[3] and two intensive mediation sessions, one of which lasted approximately four months. Collectively, this amounts to significantly more work than the average class action suit.

Defendant does not challenge the quality of class counsel's work in this litigation,

---

[2] All of these cases have been resolved by this settlement agreement, the named plaintiffs in each case are considered class representatives in the settlement agreement, and the parties will file a stipulation of dismissal in each case upon approval of the settlement agreement. *See* Kersten Decl. Ex. A at 6, 11 (ECF No. 74-3); Joint Proposed Order at 4 (ECF No. 87-3).

[3] The trial especially justifies an above average fee award because a significant amount of time and work goes into preparing for trial. Most class action settlements occur before a trial, *see Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014), and thus do not account for the time and effort put into trial preparation.

but I briefly consider it here. *See In re Synthroid Mktg. Litig.*, 264 F.3d at 721. Class counsel brought years of skill and expertise to this case, as evidenced by the resumes provided with their motion for approval of the fee award. The result achieved in this settlement, which will provide substantial relief to class members, is indicative of the quality of their work in this litigation. Thus, given the risk, the amount of effort involved, and the quality of class counsel's performance in this litigation, I conclude that 35 percent of the net fund is reasonable to compensate class counsel. *See, e.g.*, *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (approving a 38 percent fee award on a $20,000,000 settlement); *Mansfield v. Air Line Pilots Ass'n Int'l*, 2009 LEXIS 132346 (N.D. Ill. Dec. 14, 2009) (approving a 35 percent fee award on a $44,000,000 settlement); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838 (N.D. Ill. 2015) (approving a 33.3 percent fee award on a $46,000,000 settlement).[4]

Cross-checking the value of this fee award with the lodestar method confirms that 35 percent is not excessive in this case. In doing a lodestar analysis, I multiply the number of hours class counsel reasonably expended on the litigation by a reasonable hourly rate. *Mathur v. Bd. of Tr. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). Once the lodestar is calculated, "[t]he total lodestar estimate is then divided into the proposed fee calculated under the percentage method. *Manual for Complex Litigation (Fourth)* § 14.122 (2004). The resulting figure represents the risk multiplier to compare to multipliers applied in other

---

[4] The conclusion that the market would have agreed to a 35 percent fee award in this litigation at the time it began is further supported by the fact that plaintiffs' counsel entered into a contingency arrangement at the beginning of this litigation with each class member for 33 1/3 percent recovery, increased to 40 percent in the event of an appeal. Kersten Decl. ¶ 7 (ECF No. 81-4).

cases. *Id.* This multiplier is used to take class counsel's risk of nonpayment into account, and its use is mandatory in contingency fee cases. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cr. 1994).[5]

Class counsel collectively report a total lodestar of $31,389,613.50. Dividing this number into the requested fee of $29,011,162 results in a risk multiplier of .92. According to Eisenberg and Miller, the mean risk multiplier involving class settlement comparable in size to this settlement is 2.7, Eisenberg & Miller, *supra*, at 294 (Table 15). Thus, under the lodestar method, a fee award of $29,011,162 results in a risk multiplier that is significantly under the average for a case this size, despite the high risk described above. This confirms that the award is reasonable.

Defendant objects to the hourly rate used by several Milwaukee-based attorneys in calculating the lodestar. However, even if I were to reduce the hourly rate of every attorney in the case who charged higher than $470 per hour to $470, a reasonable rate for an experienced attorney in Milwaukee and what defendant's lead counsel charged it in this case, the lodestar cross-check still confirms that the $29,011,162 fee award is reasonable. Reducing all higher hourly rates to $470 yields a total lodestar of $22,261,545.90.[6] Dividing

---

[5] For example, a risk multiplier of 2 would be appropriate where a judge concludes that at the time the firm accepted the case, the chance of prevailing, and thus recovering fees, was 50 percent. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 569.

[6] Specifically, I reduced the following attorneys' hourly rates: all attorneys at Kersten & McKinnon S.C., reducing that firm's total lodestar to $10,015,136; attorneys Battin, Boies, Cihlar, Otto, and Schirmer at Straus & Boies LLP, reducing that firm's total lodestar to $9,647,878.15; attorneys Bartos and Clayman at Guerrieri, Clayman, Bartos & Parcelli P.C., reducing that firm's total lodestar to $1,761,127.50; attorneys Boies and Brockman at Boies, Schiller & Flexner LLP, reducing that firm's total lodestar to $371,770; attorney Feiber at Salter Feiber P.A., reducing that firm's total lodestar to $34,386; and attorneys Stephens and Reiten at Tousley Brain Stephens PLLC,

6

this into the $29,011,162 requested fee results in a 1.3 risk multiplier, which is still well under the average for a case this size.

Defendant also objects to the number of hours that two firms, Kersten & McKinnon S.C. and Straus & Boies LLP, billed in this case. Defendants point out that these two firms alone report to have spent a total of 42,000 hours on this case and accuse class counsel of over-lawyering. I do not agree with defendant that the number of hours these two firms put into this case was excessive. It makes sense that the two co-lead firms would have billed significantly more hours than other firms involved in the case. Additionally, class counsel has litigated against defendant simultaneously in four jurisdictions for several years. And as noted above, this litigation has required extensive work from class counsel, including motion briefing, appellate litigation, a ten-day trial on liability, and two intensive mediation sessions. I also reject defendant's argument that class counsel appears to have billed hours during "lulls" in litigation. As an example of this, defendant points to the period when the petition for certiorari was pending before the U.S. Supreme Court in the *Krueger* case, but work continued on other cases. For example, plaintiffs' counsel noted during oral argument that during that time they were conducting extensive discovery on damages, conducting depositions of experts in response to a *Daubert* motion filed by defendant, briefing class certification issues, and briefing the petition for certiorari.

Further, even if class counsel's hour counts were somewhat reduced, it would not affect the reasonableness of the fee award given that the risk multiplier, even factoring in the reduced hourly rates, is still well below average. In other words, I would have to

---

reducing that firm's total lodestar to $19,737.

significantly reduce the number of hours class counsel submitted in order for it to affect the lodestar analysis enough to show that the 35 percent award is excessive, and I find no cause for a significant reduction. Thus, the lodestar cross-check does not indicate that a 35 percent fee award is excessive in this case, and I will approve the award.

Defendant has also filed a motion to restrict its objections to the fee award. It obtained proprietary information from a company to determine the median hourly rate for attorneys in Milwaukee in support of its objection to class counsel's hourly rates. The hourly rates themselves are not redacted and this information is publicly available; however, defendant is contractually obligated not to publicly disclose the source of the information and therefore redacted only the name of the source. The source of the information was not germane to my decision; in fact, I did not even use the median hourly rates cited but rather the hourly rate of defendant's counsel in examining the reasonableness of the fee award. Thus, given the proprietary nature of the information and because the information had no bearing on my decision, I will grant defendant's motion to restrict. *See In re Cont'l Ill. Sec. Litig.,* 732 F.3d 1302, 1308–09 (7th Cir. 1984) (stating that the presumption of public access to judicial proceedings "relate to the public's right to monitor the functioning of our courts").

**THEREFORE, IT IS ORDERED** that plaintiff's motion for an award of attorneys' fees (ECF No. 81) is **GRANTED**. Class counsel is awarded attorneys' fees in the amount of 35 percent of the $84,000,000 fund less notice and settlement administration costs ($29,011,162). Seventy-five percent of this amount shall be paid initially and 25 percent shall be paid when the distribution of the fund is substantially completed, on class

8

counsel's motion.

**IT IS FURTHER ORDERED** that defendant's motion to restrict (ECF No. 83) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 5th day of October, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge